COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Fitzpatrick, Judges Benton, Elder, Bumgardner, Frank, Humphreys,
            Clements, Felton, McClanahan and Haley
Argued at Richmond, Virginia


GEORGE FISHER ROBINSON
                                                          OPINION BY
v.      Record No. 1879-04-2                      JUDGE ROBERT J. HUMPHREYS
                                                        OCTOBER 25, 2005
ELISA KENTY ROBINSON


UPON REHEARING EN BANC

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Frank A. Hoss, Jr., Judge Designate[1]

        John K. Taggart, III (Patricia D. McGraw; Tremblay & Smith, LLP,
        on brief), for appellant.

        Lawrence D. Diehl for appellee.


        Appellant George Fisher Robinson ("husband") appeals an equitable distribution award

entered pursuant to his divorce from appellee Elisa Kenty Robinson ("wife").  Husband contends

that the trial court improperly classified the bulk of the parties' assets as marital property

because:  (1) the assets were purchased with his separate property, (2) the trial court found that

he carried his burden of proving retraceability, and (3) there was no clear and convincing

evidence that he had gifted those assets to wife.  For the reasons that follow, we reverse the

judgment of the trial court and remand the case for further proceedings consistent with this

opinion.  We also decline to award either party the cost of their attorneys' fees for this appeal.

_____

        [1] A "Decree of Correction" was entered by Judge Von L. Piersall, Jr. on August 2, 2004.

I. BACKGROUND

Husband and wife married on November 22, 1999, and they separated on September 5, 2002. No children were born of the marriage.[2] During their relatively short marriage, neither party was employed in any capacity. Rather, the parties' only source of income was a trust fund husband inherited from his mother.[3] Husband receives a net monthly income of approximately $50,000 from the trust, which has a corpus in excess of $59 million. Husband has no control over the generation of trust income, and he is unable to invade the trust principal.[4]

Shortly after the marriage, the parties established a joint checking account and a joint savings account. The parties arranged for husband's trust income to be electronically deposited directly into the joint checking account, and the majority of the parties' expenses, including their car loans and mortgage payments, were paid from that account. During the course of the marriage, husband deposited a total of $2,156,351.14 into the joint checking account, and wife deposited $3,703.80 into the checking account during that same time frame.[5]

One month after their marriage, husband and wife purchased a home, known as "Bleak House," in Earleysville, Virginia. The property was jointly-titled in both parties' names, and wife co-signed the mortgage on the residence. The purchase price of the house was $380,000,

_____

[2] However, both parties have minor children from former marriages.

[3] Because husband's siblings are named beneficiaries as well, they also receive a portion of the income generated by the trust.

[4] It is unclear whether husband's status as a trust beneficiary is limited to a term of years or is indefinite in length. Although husband testified, and has consistently maintained, that he is only entitled to receive income from the trust for a twenty-one-year period, the record contains a letter from the trust administrator indicating that husband's "right to this income would only cease or terminate upon his death."

[5] Wife's contributions to the joint account were derived entirely from her periodic child support payments from her former husband.

but the parties enhanced the value of the home by adding a heated in-ground swimming pool and a basketball court. The parties used husband's trust income to furnish the home and to pay for the mortgage and home improvement costs.[6]

In July 2001, the parties also purchased a 2001 Ford Excursion and a 2001 Ford F-350. They paid between $40,000 and $45,000 for each vehicle, and husband and wife are both listed on the titles of these vehicles. Although wife co-signed the loans for these vehicles as well, husband's trust income was used to make the down payment and all subsequent payments on both vehicles.

Wife's primary contribution to the marriage involved handling the parties' finances. In addition to paying the bills, wife encouraged husband to set aside additional money in the savings account and to curb his spendthrift habits. Wife also "took care of the home, washed the clothes, cooked dinner . . . cleaned the house, mowed the grass, took care of the pool . . . [and did the] [s]weeping, [] general cleaning and cooking." Husband, in contrast, took care of the grocery shopping and helped wife maintain the exterior of the home.

As of the date of separation, the joint savings account contained $244,137.16, and the joint checking account had a balance of $68,886.67. After the parties separated, husband removed the $244,137.16 from the joint savings account and then closed that account. Husband also withdrew $38,886.67 from the joint checking account, leaving a balance of $30,000 at wife's disposal.

On November 1, 2002, wife filed a bill of complaint, seeking a divorce on the grounds of desertion, an award of spousal support, and equitable distribution of the marital estate. The trial

---

[6] Husband testified that a portion of the down payment used to purchase the home was derived from a cash advance wife obtained from a credit card. However, it is undisputed that this loan was repaid using husband's trust income.

- 3 -

court held an emergency *pendente lite* hearing on December 20, 2002. At the conclusion of the hearing, the court ordered husband to pay all of the parties' outstanding debts and to continue paying the mortgage on Bleak House. The court also awarded wife $4,500 a month in temporary spousal support.

On November 4, 2003, the trial court conducted a hearing on the merits of wife's bill of complaint. During the hearing, husband testified that he set up the checking account in both parties' names "[p]urely for convenience just so [wife] would be able to sign checks to pay bills" and that he set up the savings account as a joint account for the "[s]ame reason."[7] Husband also testified that wife co-signed the mortgage and the loans on the vehicles because "she didn't have any income to back up a loan and [his] credit was not in good enough shape to get the loan by [himself] even with [his] income."

During closing arguments, wife contended that almost all of the parties' assets— including the marital residence and the two vehicles—should be equitably distributed, arguing that "the way the money was handled would allow the Court to infer intent on Mr. Robinson's part to make a gift." Husband, in contrast, argued that simply retitling separate property is insufficient evidence of donative intent and, thus, the bulk of the parties' estate constituted husband's separate property.

At a hearing conducted on January 13, 2004, the court awarded wife a divorce *a vinculo matrimonii* on the grounds of separation for one year. As for classification of the parties' assets, the court found as follows:

> I find that while Mr. Robinson clearly made all or almost all of the
> monetary contributions to the marriage, the wife, Mrs. Robinson,
> did make significant nonmonetary contributions. To me, the
> logical conclusion of the husband's argument that since he could

_____

[7] Similarly, at an earlier deposition, husband testified that "convenience is the only reason [they set up the accounts] that way."

- 4 -

> trace his monetary contributions to all of the assets of the marriage, thus they should be his, would mean that in every marriage where the wife does not work and produce income, she would not be able to share in any of the assets accumulated during the marriage.
>
> So to me, while it's clear most of the assets of the marriage were purchased with moneys obtained solely from the husband's trust proceeds and I would concede could be traced as contemplated by statute, it's equally clear to me that Mrs. Robinson deserves a share in a portion of those assets based on the factors. To me, just because it came from a trust fund – the parties considered it as their income. To me, it's just the same as if Mr. Robinson was actually earning that money on a monthly – on a yearly basis.

Thus, the court ordered the marital home to be sold and the proceeds divided between the parties.[8] The court also ordered that wife should receive one-half of the $244,137.16 that husband withdrew from the savings, reasoning that "such funds were there and available, regardless of the source of those funds, largely through the efforts of Mrs. Robinson to bring Mr. Robinson's spending habits under control and to better manage their income. I believe she is entitled to half of it, which is $122,069." The court also ordered husband to pay wife an additional $5,368, reasoning that, on the date of separation, husband withdrew $38,886 from the joint checking account and left wife $27,610, resulting in a difference of $11,276, of which the court believed wife was entitled to half.[9]

The trial court also awarded wife the Ford Excursion and ordered husband to pay off the remaining debt on the vehicle. The court awarded husband the F-350. Finally, the court ordered husband to pay $3,500 a month in spousal support from February 1, 2004 until July 1, 2005, reasoning that a limited period of spousal support was warranted because the marriage was of

---

[8] As of the date of the hearing, the appraised value of Bleak House was $470,000, the Ford Excursion was valued at $32,000, and the Ford F-350 was valued at $28,000.

[9] Although husband left $30,000 in the account, wife testified that several outstanding checks reduced the actual balance to $27,610.

relatively short duration. The court also noted that "the award made [to wife during] the equitable distribution was significant, especially considering monetary contributions by the husband and lack thereof by the wife," concluding that wife did not need spousal support for an extended period because she "is receiving approximately a quarter of a million dollars in marital assets when the evidence shows she brought very little to the table in the first instance."

After the hearing, husband moved to reconsider, arguing that "the Court's finding that all of the property would be considered marital, notwithstanding its further finding that Mr. Robinson had met his burden of retracing his separate contributions to the property, was in error." Husband reasoned that "it was undisputed that Mr. Robinson's trust and the income from that trust were his separate property, acquired by him by inheritance long before the parties' marriage."

The trial court denied husband's motion to reconsider, holding that,

> [w]hile the property of Mr. Robinson came into the marital partnership as separate property . . . Mrs. Robinson contributed significantly to the "maintenance" and "preservation" of the asset. It was, and is still, my belief that there would have been no asset to divide but for the efforts of Mrs. Robinson and I think she should be allowed to share in the same to the extent ordered in the court's ruling.

By opinion dated May 31, 2005, a three-judge panel of this Court, with one judge dissenting, reversed the equitable distribution award and remanded the case for reconsideration. See Robinson v. Robinson, 45 Va. App. 682, 613 S.E.2d 484 (2005). By order dated June 28, 2005, this Court granted wife's petition for rehearing *en banc* and stayed the mandate of the panel opinion. Upon rehearing, we reverse the judgment below and remand for further proceedings consistent with this opinion.

On appeal, we view the evidence in the light most favorable to wife, the party prevailing below. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). Also, because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it. McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994); Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).

Husband contends that the trial court erred in classifying the bulk of the parties' assets—including the marital residence and the joint bank accounts—as marital property. Husband reasons that he successfully traced all of the assets to his trust income, which constitutes his separate property. Because wife did not present clear and convincing evidence that husband gifted wife with any of these items, he concludes that the trial court erred when it determined that wife was entitled to a share of these assets. For the reasons that follow, we hold that the trial court erred when ruling that the husband's share of his trust income was marital property because "it's just the same as if [husband] was actually earning that money on a monthly—on a yearly basis." Accordingly, we reverse and remand this case for reconsideration in light of the holding of this opinion.

## A.

The equitable distribution statute "'is intended to recognize a marriage as a partnership and to provide a means to divide equitably the wealth accumulated during and by that partnership based on the monetary and non-monetary contributions of each spouse.'" von Raab v. von Raab, 26 Va. App. 239, 245, 494 S.E.2d 156, 159 (1997) (quoting Williams v. Williams, 4 Va. App. 19, 24, 354 S.E.2d 64, 66 (1987)). However, "[e]quitable distribution deviates from traditional views of property ownership in that 'whether the property is separate or marital is

determined by the statutory definition and is not determined by legal title.'" Lightburn v.

Lightburn, 22 Va. App. 612, 616, 472 S.E.2d 281, 283 (1996) (quoting Garland v. Garland, 12

Va. App. 192, 195, 403 S.E.2d 4, 6 (1991)). Thus, before an equitable distribution award may be

entered, the court must classify the parties' assets as "marital," "separate," or "part separate and

part marital." See Code § 20-107.3(A).

Property acquired during the marriage is presumptively marital, unless shown to be

separate property. See Code § 20-107.3(A)(2)(iii); see also Rahbaran v. Rahbaran, 26 Va. App.

195, 209, 494 S.E.2d 135, 142 (1997); Barnes v. Barnes, 16 Va. App. 98, 104, 428 S.E.2d 294,

299 (1993) ("[P]roperty acquired during the marriage is presumed to be marital and property

acquired before marriage is presumed to be separate."). Because the majority of the parties'

assets were acquired during the parties' marriage, husband had the burden of proving that those

assets constitute his separate property. See von Raab, 26 Va. App. at 248, 494 S.E.2d at 160.[10]

According to Code § 20-107.3(A)(1), separate property includes, *inter alia*, "all property

acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other

than the other party," as well as "all property acquired during the marriage in exchange for or

from the proceeds of the sale of separate property, provided that such property acquired during

the marriage is maintained as separate property." Also, "[i]ncome received from separate

property during the marriage is separate property if not attributable to the personal effort of

either party," and "[t]he increase in value of separate property during the marriage is separate

property," unless that increase is both "substantial" and attributable to significant "personal

---

[10] Not all of the property the court classified as marital was acquired "during the marriage." For example, the court classified a station wagon that husband acquired from a prior marriage—and that was titled solely in his name—as marital property, and then distributed that station wagon to husband. Because this vehicle is presumptively husband's separate property, wife bore the burden of proving that an identifiable portion of the parties' equity in the station wagon constituted marital property.

efforts" of either party, in which case the increase in value—and only that increase in value—"is to be considered marital property."  Id.; see also Code § 20-107.3(A)(3).

Marital property, in contrast, includes "all property titled in the names of both parties," unless one of the exceptions contained in Code § 20-107.3(A)(3) applies.  As pertinent here, Code § 20-107.3(A)(3) provides that:

> In the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property.

Code § 20-107.3(A)(3)(a); see also Code § 20-107.3(A)(1).  Also, if "marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property."  Code § 20-107.3(A)(3)(e).  However, "to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification."  Id.  Similarly, "[w]hen separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property," unless the separate property "is retraceable by a preponderance of the evidence and was not a gift," in which case that asset "shall retain its original classification."  Code § 20-107.3(A)(3)(f).

B.

Neither party disputes that husband's trust income constitutes his separate property.  See Code § 20-107.3(A)(1) (defining "separate property" to include "all property acquired during the marriage by bequest, devise, descent, [or] survivorship," as well as "[i]ncome received from separate property during the marriage").  Also, wife has not cross-appealed the trial court's

- 9 -

finding that husband carried his burden of proving that almost all of the parties' assets "could be [re]traced [to husband's trust income] as contemplated by the [equitable distribution] statute."[11] Thus, assuming, as we must, that husband carried his burden of retracing the assets to his separate property, wife had the burden of proving that those assets were marital property. See von Raab, 26 Va. App. at 248, 494 S.E.2d at 160 (citing Lightburn, 22 Va. App. at 617, 472 S.E.2d at 283).

Wife advances two arguments in support of her position that the trial court correctly classified the assets as marital property. First, she contends that the trial court correctly determined that husband "gifted" wife with a portion of his trust income. Second, wife contends that, "but for" her decision to take control of husband's finances, husband would have squandered his trust income. Thus, wife concludes that the money the parties saved during the marriage (and all assets purchased with that money) resulted from her "personal efforts" and, thus, should be classified as marital property. We disagree.

1. The Trial Court Did Not Find that Husband Gifted Wife with a Share of the Assets

As a general rule, "all property titled in the names of both parties" should be classified as marital property. Code § 20-107.3(A)(2). This presumption also applies "[w]hen separate property is retitled in the joint names of the parties." Code § 20-107.3(A)(3)(f). However, if the jointly-titled asset (or an identifiable portion of that asset) "is retraceable by a preponderance of

---

[11] By holding that husband carried his burden of proving retraceability, the trial court implicitly concluded that all of the money in the bank accounts, as well as the money used to purchase the parties' assets, was derived from husband's trust income. Although wife testified that she received approximately $500 a month in child support, she admitted that she used that $500 exclusively to support her children. Accordingly, the trial court could reasonably have inferred that none of wife's child support money—which would have been her separate property—was used to purchase any of the parties' assets.

- 10 -

the evidence" to a separate asset, and the jointly-titled property "was not a gift," then the portion of the asset retraceable to the separate property "shall retain its original classification." Id.

Here, the trial court found—and wife does not contest—that husband carried his burden of proving that a majority of the parties' assets—including the home, the two vehicles, and the bank accounts—were retraceable to his trust income. Thus, those assets retained their separate character unless wife carried her burden of proving that the assets were "a gift." See id.; see also Utsch v. Utsch, 266 Va. 124, 128, 581 S.E.2d 507, 508 (2003) ("The burden of proof that the transfer was a gift is upon the party seeking to establish the gift."); Cirrito v. Cirrito, 44 Va. App. 287, 303, 605 S.E.2d 268, 275-76 (2004) ("The burden of proof that the transfer was a gift is upon the party seeking to establish the gift by clear and convincing evidence."); Theismann v. Theismann, 22 Va. App. 557, 565-66, 471 S.E.2d 809, 813 (noting that, if separate property is retitled in the names of both spouses, the non-owning spouse must "prove the existence of a gift"), aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996).

No presumption of gift arises from husband's decision to title his separate property in both parties' names. See Code § 20-107.3(A)(3)(g); Utsch, 266 Va. at 128, 581 S.E.2d at 508; Rowe v. Rowe, 24 Va. App. 123, 134, 480 S.E.2d 760, 765 (1997) ("The fact that property is jointly titled must be considered by the trial court in determining if a gift was made, but alone, it is insufficient proof of a gift."); Lightburn, 22 Va. App. at 616-17, 472 S.E.2d at 283 ("Virginia does not presume a gift simply by virtue of jointly titling or retitling property."). Rather, to establish the existence of a gift, wife was required to prove, by clear and convincing evidence, the following three elements: "(1) the intention on the part of the donor to make the gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee." Theismann, 22 Va. App. at 566, 471 S.E.2d at 813; see also Utsch, 266 Va. at 128, 581 S.E.2d at 509; Cirrito, 44 Va. App. at 303, 605 S.E.2d at 276. Here, husband argues that wife failed to prove the first

- 11 -

element, specifically, "his donative intent and the nature and extent of that intent." Cirrito, 44 Va. App. at 303, 605 S.E.2d at 276.

During the equitable distribution hearing, wife testified that the parties considered the trust income to be "their" property. Also, on cross-examination, husband conceded that he had previously stated that he intended to make wife a "co-owner" of the bank accounts. However, husband also consistently testified that he created the joint bank accounts purely as a matter of convenience, and he denied intending to gift wife with a portion of his trust income or with a share of the jointly-titled assets purchased with that income.

The trial court did not expressly resolve this conflicting testimony, merely finding that "the parties considered it as their income . . . it's just the same as if Mr. Robinson was actually earning that money on a monthly—on a yearly basis." As husband argues, this finding is not equivalent to ruling that wife proved husband's donative intent by clear and convincing evidence. Although, unquestionably, "[i]ntent is a question to be determined by the fact finder," Cirrito, 44 Va. App. at 305, 605 S.E.2d at 276, this Court cannot uphold a factual finding that simply does not exist.

Moreover, it is apparent that the trial court did not base its decision on a finding that husband gifted wife with a portion of his trust income. In its initial ruling on the merits, the trial court ruled that, based on wife's non-monetary contributions, wife "deserves a share in a portion of [the parties'] assets."[12] The trial court also ruled that "the parties considered it as their income . . . just the same as if [husband] was actually earning that money on a monthly—on a yearly

---

[12] Although "non-monetary contributions" are relevant in the context of *distributing* marital property under Code § 20-107.3(E) rather than *classifying* property under Code § 20-107.3(A), it is clear from the record that the trial court's comment regarding wife's non-monetary contributions was advanced as the justification for classifying the trust income as marital property and not, as wife contends, merely as justification for distribution of the marital property.

basis." Similarly, in denying husband's motion to reconsider, the trial court reasoned that wife was entitled to a share of the bank accounts and the assets purchased with the trust income because she "contributed significantly to the 'maintenance' and preservation' of the [trust income]." Absent from the court's rulings is any mention of a "gift" or an express or implied finding that wife carried her burden of proving husband's donative intent by clear and convincing evidence.[13] Indeed, the trial judge's ruling that the trust income was similar to a salary earned during the marriage reflects a rejection of wife's argument that he could infer a gift occurred. Thus, despite being given an opportunity to rule on the issue of whether husband gifted wife with a share of his trust income, the trial court never did so. Accordingly, we agree with husband that the trial court did not make the requisite findings to support a conclusion that husband gifted wife with a portion of his trust income.

    2. <u>The Assets Did Not Increase in Value as a Result of Wife's "Personal Efforts"</u>

As noted above, if a separate asset increases in value during the marriage, Code § 20-107.3(A)(3)(a) authorizes the trial court to classify that increase in value as marital property, but only to the extent that the increase "is attributable to the personal efforts of either party."[14] In order for this rule to apply, the "personal efforts" of the contributing spouse "must be significant and result in substantial appreciation of the separate property." Id.; see also Code § 20-107.3(A)(1). Also, "[s]eparate property that has appreciated in value due to forces other than either party's efforts, such as passive appreciation or the personal efforts of others, remains

---

    [13]Although the trial court was not required to use any "magic words" to find that husband gifted wife with a portion of his trust income, the language used by the court must contain *some* language from which a finding of donative intent, delivery, and acceptance could be inferred.

    [14] "Personal effort" is defined as "labor, effort, inventiveness, physical or intellectual skill, creativity, or managerial, promotional or marketing activity applied directly to the separate property of either party." Code § 20-107.3(A)(3)(a).

- 13 -

separate property." Congdon, 40 Va. App. at 267, 578 S.E.2d at 839; see Hart v. Hart, 35 Va. App. 221, 234, 544 S.E.2d 366, 372 (2001) ("A party is entitled to the passive growth of [his] separate property . . . ."); see also Martin v. Martin, 27 Va. App. 745, 751, 501 S.E.2d 450, 453 (1998) (en banc); Rowe, 24 Va. App. at 134, 480 S.E.2d at 765.

Neither party disputes that husband carried his burden of proving that the trust income constitutes his separate property. Thus, the burden of proof shifted to wife to demonstrate: (1) that she contributed "marital property or personal effort" to the trust income, and (2) that, as a proximate result of her contributions, "the separate property increased in value." Code § 20-107.3(A)(3); see also Cirrito, 44 Va. App. at 296-97, 605 S.E.2d at 272-73; Congdon, 40 Va. App. at 267-68, 578 S.E.2d at 839; Bchara v. Bchara, 38 Va. App. 302, 314-15, 563 S.E.2d 398, 404 (2002); Martin, 27 Va. App. at 753, 501 S.E.2d at 454 ("[T]he increase in value of the retraceable separate funds shall be separate unless the non-owning party proves that all or a portion of the increase was due to the contribution of marital funds or significant personal effort.").

Wife contends that she met her burden of proof because, as a result of her "personal efforts" to control the parties' finances, husband saved a portion of his trust income in the joint bank accounts. Thus, she concludes that the saved income—and the assets purchased and financed with that income—should be classified as marital property. In this vein, wife's argument parallels the trial court's ruling that wife's "significant" contribution "to the 'maintenance' and 'preservation'" of husband's trust income should entitle her to a share of the parties' assets.

However, although the "increase in value" of separate property may be classified as marital property if attributable to either party's "personal efforts," the underlying asset itself does not lose its separate character. See Code § 20-107.3(A)(3)(a). Here, then, if the trust income

- 14 -

"increased in value," for example, by earning investment income, that increase in value could potentially be classified as marital property. However, the trust income itself retained its separate character and could not be reclassified regardless of whether wife's "personal efforts" enhanced the value of that asset.

Here, with the exception of any passive interest that may have been generated, placing the trust income into a savings account did not increase the "value" of the income. The decision to save a portion of husband's trust income merely prevented that income from being spent on another asset. "Preserving" and "maintaining" an asset is not necessarily equivalent to enhancing the value of that asset. Cf. Bchara, 38 Va. App. at 316, 563 S.E.2d at 405 (noting that, "even if husband's [actions] saved money, those efforts are not the type of 'personal efforts' required to transmute a portion of separate property into joint property"). Because there is no evidence that wife's "personal efforts" actually caused the separate asset to "increase in value," Code § 20-107.3(A)(3)(a) and 20-107.3(A)(1) are inapplicable. See id. at 315, 563 S.E.2d at 404 ("'The significant factor, however, is not the amount of effort or funds expended, but rather the fact that value was generated or added by the expenditure or significant personal effort.'" (quoting Gilman v. Gilman, 32 Va. App. 104, 120, 526 S.E.2d 763, 771 (2000))); Hart v. Hart, 27 Va. App. 46, 66, 497 S.E.2d 496, 505 (1998) ("It is the value that [the personal efforts] add to the property . . . that is the proper consideration.").[15]

Moreover, "[w]hen marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the

---

[15] It is also questionable whether wife's conduct actually constitutes a "personal effort" within the meaning of the equitable distribution statute. As we have noted, the statute "contemplates a significant personal effort that substantially affects the value of property, *not merely a joint decision that may have been influenced by one spouse*." Martin, 27 Va. App. at 755, 501 S.E.2d at 455 (emphasis added).

contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution." Code § 20-107.3(A)(3)(d). Here, because "the record contains no evidence of the value of wife's contributions" in managing and administering husband's trust income, "her contributions were transmuted into husband's separate property when they were commingled with husband's separate property." Rowe, 24 Va. App. at 136, 480 S.E.2d at 766 (holding that, where wife failed to produce any evidence relating to the "value" of the "time and energy" she spent refurbishing a home that was husband's separate property, those efforts also became husband's separate property); cf. Courembis v. Courembis, 43 Va. App. 18, 39, 595 S.E.2d 505, 516 (2004) (rejecting wife's argument that "her management of husband's separate funds is evidence that husband did not maintain [those funds] as separate property"). Thus, because the record contains no evidence relating to the "value" of wife's efforts to "preserve and maintain" husband's trust income, those efforts did not transmute husband's separate property into marital property but, instead, were absorbed into and became part of his separate property. See Rowe, 24 Va. App. at 136, 480 S.E.2d at 766; see also Bchara, 38 Va. App. at 315, 563 S.E.2d at 404 ("The record should include evidence of the monetary value of the non-owning spouse's personal efforts . . . .").

For these reasons, we hold that the trial court clearly erred in classifying the joint bank accounts containing husband's trust income as marital property. Absent a finding that husband gifted a portion of his trust income to wife, those accounts remained his separate property. And, because the trial court found that husband carried his burden of proving retraceability, the court clearly erred in classifying the assets purchased and financed with husband's separate property—including Bleak House and the two vehicles—as marital property.[16] We therefore reverse and

---

[16] The trial court did not find, nor do we address, whether the $90,000 appreciation in the value of Bleak House should be classified as marital property because it was attributable to an

- 16 -

remand the equitable distribution award for reconsideration in light of the holding of this opinion.[17]

## C.

Wife did not cross-appeal the trial court's limited award of spousal support. However, where an equitable distribution award is reversed on appeal and "the provisions with regard to the marital property are to be considered on remand, the court must necessarily re-examine spousal support in the light of whatever new or different considerations flow from the additional proceedings." McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 161 (1985). Accordingly, because we reverse the equitable distribution award and remand for reconsideration, we further direct the trial court, on remand, to reconsider the issue of spousal support. See id.; see also Code § 20-107.1 (providing that, in awarding spousal support, the trial court "shall" consider "[t]he provisions made with regard to the marital property under § 20-107.3"); Morris v. Morris, 3 Va. App. 303, 311, 349 S.E.2d 661, 665 (1986).

## D.

Both parties request that this Court award the costs and attorneys' fees incurred on appeal. See generally O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100

---

expenditure of marital funds or the "personal efforts" of the parties rather than passive market factors. See generally Moran v. Moran, 29 Va. App. 408, 413, 512 S.E.2d 834, 836 (1999).

[17] The trial court's concern, specifically, that this outcome "would mean that in every marriage where the wife does not work and produce income, she would not be able to share in any of the assets accumulated during the marriage," is without merit. In most cases, the money earned by the parties during the marriage constitutes marital property, and the assets purchased with that income are also marital property. See Code § 20-107.3(A)(2) (defining "marital property" as, *inter alia*, all property "acquired by each party during the marriage which is not separate property"). Regardless of whether the wife worked outside the home, she would therefore be entitled to a share of those assets. See Code § 20-107.3(E). The situation presented in this case—where one spouse's separate property functions as the sole source of income throughout the marriage—is readily distinguishable.

(1996). Because this litigation "addressed appropriate and substantial issues," and "neither party generated unnecessary delay or expense in pursuit of its interests," Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004), we deny both parties' requests for attorneys' fees and costs.

### III. CONCLUSION

For these reasons, we hold that the trial court clearly erred when it classified the parties' assets as marital property notwithstanding its conclusion that husband sustained his burden of proving retraceability. Accordingly, we reverse the equitable distribution award in its entirety and remand the case for reconsideration. And, because the limited award of spousal support was based upon the erroneous equitable distribution award, we also remand the issue of spousal support for reconsideration. Finally, we decline to award either party the cost of their attorneys' fees on appeal.

Reversed and remanded.

Elder, J., with whom Bumgardner, Clements and McClanahan, JJ., join, dissenting.

I disagree with the majority. The record reflects wife expressly argued to the trial court that husband gifted to her the trust funds deposited into their joint checking account. Further, I believe the evidence is sufficient to support a finding that husband made a gift of his trust fund money to wife and that the trial court's ruling constituted a finding to that effect. Thus, I would affirm the trial court's decision, and I respectfully dissent.

The parties married on November 22, 1999, and on December 15, 1999, they opened a joint checking and a joint savings account. Husband's monthly trust income was electronically deposited into the joint checking account. Husband admitted on deposition that "it was [his] intent that [wife] would be *co-owner* of the [parties' joint checking] account." (Emphasis added). The parties placed excess amounts from the joint checking account into the joint savings account, and they made all purchases and paid all bills from these accounts. Despite receiving approximately $50,000 per month from his trust fund, husband had never had a savings account and was heavily in debt at the time of the parties' marriage. Wife testified it "was a given" that she would handle the trust funds during the parties' marriage, and she wrote almost all the checks from the account during the marriage. When the parties purchased the marital residence, they did so with funds from the joint savings account, with the exception of a cash advance on wife's credit card, which debt was subsequently paid with money from husband's trust fund. Wife co-signed the note for the property. Wife also co-signed for the purchase of the automobiles the parties bought during their marriage. Husband conceded that he could not have financed the purchase of the home alone because of his poor credit history and that wife could not have purchased the property or vehicles alone because she lacked sufficient income.

Husband argued as follows:

> [Wife] never testified that [husband] intended to make a
> gift to her of those sums of money. Simple retitl[ing] in and of
> itself is not evidence of an intent to change unless it was a gift, and
> [wife] never testified it was a gift. She never testified it was done
> with an intent, never testified of any discussions.
>
>        *       \*       \*       \*       \*       \*       \*
>
> . . . [Husband] testified it was for convenience purposes,
> the checking account so she could write the checks and the savings
> account because the bank said you have to have them the same
> way. *If the Court believes that testimony*, then we stop there. It's
> his separate property.

(Emphasis added).

Wife responded, "There is a direct conflict in the testimony between [husband] and

[wife]," and "[wife's] credibility is firm." Wife disputed husband's position, expressly arguing

to the court that

> the way the money was handled would allow the Court to infer
> intent on [husband's] part to make a gift.
>
> Every month, the money is put into a joint checking
> account. [Wife] has the power to write checks for the entire
> amount. [Wife] could have gone to the bank and withdrawn [the
> entire balance], and she would have been entitled to do that. She
> had the right to exercise complete control over his accounts and
> she did so. The evidence was she paid most bills. Now, in light of
> those circumstances, Judge, I think the Court should consider
> finding these transferred from separate into marital . . . .

The trial court expressly "accept[ed]" wife's proposed classifications of the disputed

property. It also noted that although husband successfully retraced the sums contributed from his

trust fund, "the parties considered [those sums] as *their* income." (Emphasis added). The trial

court treated those sums "as if [husband] was actually earning that money." On the issue of

"distributing the marital property," the court "[found] that while [husband] clearly made all or

almost all of the monetary contributions to the marriage, [wife] did make significant

- 20 -

nonmonetary contributions." It divided evenly between the parties the marital residence and joint accounts.

Husband filed a motion to reconsider, arguing the court erred in classifying as marital the funds he had retraced to his separate property. The trial court denied the motion, reasoning that although the trust funds

> came into the marital partnership as separate property[,] . . . [wife] contributed significantly to the "maintenance" and "preservation" of the asset. It was, and still is, my belief that there would have been no asset to divide but for the efforts of [wife,] and I think she should be entitled to share in the same to the extent ordered in the court's ruling.

On appeal,

> "we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below. . . ." The trier of fact ascertains [witnesses'] credibility, determines the weight to be given their testimony, and has the discretion to accept or reject any of the [witnesses'] testimony[, in whole or in part].

Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc) (quoting Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). The trial court is presumed to know and properly apply the law "absent clear evidence to the contrary in the record." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977).

In making an equitable distribution award, the trial court must classify disputed property as separate, marital, or hybrid property and must value and divide property as requested by the parties. See Stumbo v. Stumbo, 20 Va. App. 685, 693, 460 S.E.2d 591, 595 (1995). However, beyond these basic requirements, the trial court need not make specific findings of fact to support the equitable distribution. As long as the record supports the result, the court need not quantify the weight it gave to each factor. E.g. Marion v. Marion, 11 Va. App. 659, 664, 401 S.E.2d 432, 436 (1991). Compare Code § 20-107.1 (requiring, *inter alia*, that "[i]n contested cases in the

- 21 -

circuit courts, any order granting, reserving or denying a request for spousal support shall be accompanied by written findings and conclusions of the court identifying the factors in subsection E which support the court's order").

"If [a] party claiming a separate interest in . . . transmuted property proves retraceability," as husband did here, "the burden shifts to the other party to prove that the transmutation of the separate property resulted from a 'gift.'" von Raab v. von Raab, 26 Va. app. 239, 248, 494 S.E.2d 156, 160 (1997). The party claiming the existence of a gift must prove by clear and convincing evidence "(1) intention on the part of the donor to make a gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee." Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). Per Code § 20-107.3(A)(3)(g), "no presumption of gift arises from the fact that the property was retitled." Id. at 565, 471 S.E.2d at 813. Thus, evidence of joint titling, standing "alone, . . . is insufficient proof of a gift," but proof "that property is jointly titled must be considered by the trial court in determining if a gift was made." Rowe v. Rowe, 24 Va. App. 123, 137, 480 S.E.2d 760, 766 (1997).

The majority focuses on husband's argument that wife failed to prove the first element--that husband had the requisite donative intent. Donative intent, like any other type of intent, may be proved by circumstantial evidence, see, e.g., Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988), such as a person's conduct and statements, see Polk v. Commonwealth, 4 Va. App. 590, 594, 358 S.E.2d 770, 773 (1987). I believe this is merely "a standard of review case," see Cirrito v. Cirrito, 44 Va. App. 287, 305, 605 S.E.2d 268, 277 (2004), and that the evidence, viewed in the light most favorable to wife, supports the trial court's implicit finding, by clear and convincing evidence, that husband acted with the requisite intent to gift to wife the trust funds deposited in the parties' joint checking account.

- 22 -

Although husband claimed at trial he had wife's name put on the joint checking and savings accounts merely for purposes of convenience, he also testified he did so with the "intent that [wife] would be *co-owner* of the [parties' joint checking] account." (Emphasis added). The trial court was entitled to reject husband's testimony that he made wife a co-owner of the property solely for convenience and to conclude that, by doing so, he gifted to her the contents of that account. See also Utsch v. Utsch, 266 Va. 124, 128-29, 581 S.E.2d 507, 509 (2003) (stating that evidence need only establish that the transfer was a gift and not "that a gift was intended for a[ny] particular purpose"). But see Cirrito, 44 Va. App. at 306, 605 S.E.2d at 277 (concluding that quoted language from Utsch was *dicta*). Nothing in the relevant statutes or case law requires that the trial court's rejection of husband's testimony or finding of a gift had to be express or employ any "magic words" as long as clear and convincing evidence supported its classification of the property as marital. Because the evidence supported a finding that husband made a gift to wife of the trust funds deposited in the joint checking account, the evidence supported a finding that the home and cars, purchased with funds from the joint accounts, were marital, as well.

Although the trial court referred to husband's monetary and wife's non-monetary contributions to the marriage, nothing in the record compels the conclusion that it considered these contributions as relevant to anything other than how to divide the property it had concluded was marital. Statements by the trial court in making the equitable distribution and denying husband's motion for reconsideration to the effect that wife's efforts to control husband's spending habits resulted in their accumulating savings of approximately $244,000 do not compel a different result. The trial court did not state that this was the basis for its classification ruling, and this information was clearly relevant to its determination of how much of a share of the particular marital asset wife was entitled to receive.

For these reasons, I would affirm the trial court's award, and I respectfully dissent.

- 23 -

Tuesday  28th

June, 2005.

George Fisher Robinson,          Appellant,

 against    Record No. 1879-04-2
        Circuit Court No. CH02-12,581

Elisa Kenty Robinson,           Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Bumgardner, Frank,
Humphreys, Clements, Felton, Kelsey, McClanahan and Haley

On June 9, 2005 came the appellee, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on May 31, 2005, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on May 31, 2005 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellee shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. It is further ordered that the appellee shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Frank and Humphreys
Argued by teleconference


GEORGE FISHER ROBINSON

                                                    OPINION BY
v.       Record No. 1879-04-2           JUDGE ROBERT J. HUMPHREYS
                                                    MAY 31, 2005

ELISA KENTY ROBINSON


                FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                        Frank A. Hoss, Jr., Judge Designate[1]

          John K. Taggart, III (Patricia D. McGraw; Tremblay & Smith, LLP,
          on briefs), for appellant.

          Lawrence D. Diehl for appellee.


       Appellant George Fisher Robinson ("husband") appeals an equitable distribution award

entered pursuant to his divorce from appellee Elisa Kenty Robinson ("wife"). Husband contends

that the trial court improperly classified the bulk of the parties' assets as marital property because

the assets were purchased with his separate property, the trial court found that he carried his

burden of proving retraceability, and there was no clear and convincing evidence that he had

gifted those assets to wife. For the reasons that follow, we reverse the judgment of the trial court

and remand the case for further proceedings consistent with this opinion. We also decline to

award either party the cost of their attorneys' fees for this appeal.

_____
       [1] A "Decree of Correction" was entered by Judge Von L. Piersall, Jr. on August 24, 2004.

I. BACKGROUND

Husband and wife married on November 22, 1999, and they separated on September 5, 2002. No children were born of the marriage.[2] During their relatively short marriage, neither party was employed in any capacity. Rather, the parties' only source of income was a trust fund husband inherited from his mother.[3] Husband receives a net monthly income of approximately $50,000 from the trust, which has a corpus in excess of $59 million. Husband has no control over the generation of trust income, and he is unable to invade the trust principal.[4]

Shortly after the marriage, the parties established a joint checking account and a joint savings account. The parties arranged for husband's trust income to be electronically deposited directly into the joint checking account, and the majority of the parties' expenses, including their car loans and mortgage payments, were paid from that account. During the course of the marriage, husband deposited a total of $2,156,351.14 into the joint checking account, and wife deposited $3,703.80 into the checking account during that same time frame.[5]

One month after their marriage, husband and wife purchased a home, known as "Bleak House," in Earleysville, Virginia. The property was jointly-titled in both parties' names, and wife co-signed the mortgage on the residence. The purchase price of the house was $380,000, but the parties enhanced the value of the home by adding a heated in-ground swimming pool and

---

[2] However, both parties have minor children from former marriages.

[3] Because husband's siblings are named beneficiaries as well, they also receive a portion of the income generated by the trust.

[4] It is unclear whether husband is a temporary or permanent trust beneficiary. Although husband testified, and has consistently maintained, that he is only entitled to receive income from the trust for a twenty-one-year period, the record contains a letter from the trust administrator indicating that husband's "right to this income would only cease or terminate upon his death."

[5] Wife's contributions to the joint account were derived entirely from her periodic child support payments from her former husband.

- 2 -

a basketball court. The parties used husband's trust income to furnish the home and to pay for the mortgage and home improvement costs.[6]

In July 2001, the parties also purchased a 2001 Ford Excursion and a 2001 Ford F-350. They paid between $40,000 and $45,000 for each vehicle, and husband and wife are both listed on the titles of these vehicles. Although wife co-signed the loans for these vehicles as well, husband's trust income was used to make the down payment and all subsequent payments on both vehicles.

Wife's primary contribution to the marriage involved handling the parties' finances. In addition to paying the bills, wife encouraged husband to set aside additional money in the savings account and to curb his spendthrift habits. Wife also "took care of the home, washed the clothes, cooked dinner . . . cleaned the house, mowed the grass, took care of the pool . . . [and did the] [s]weeping, [] general cleaning and cooking." Husband, in contrast, took care of the grocery shopping and helped wife maintain the exterior of the home.

As of the date of separation, the joint savings account contained $244,137.16, and the joint checking account had a balance of $68,886.67. After the parties separated, husband removed the $244,137.16 from the joint savings account and then closed that account. Husband also withdrew $38,886.67 from the joint checking account, leaving a balance of $30,000 at wife's disposal.

On November 1, 2002, wife filed a bill of complaint, seeking a divorce on the grounds of desertion, an award of spousal support, and equitable distribution of the marital estate. The trial court held an emergency *pendente lite* hearing on December 20, 2002. At the conclusion of the

---

[6] Husband testified that a portion of the down payment used to purchase the home was derived from a cash advance wife obtained from a credit card. However, it is undisputed that this loan was repaid using husband's trust income.

hearing, the court ordered husband to pay all of the parties' outstanding debts and to continue paying the mortgage on Bleak House. The court also awarded wife $4,500 a month in temporary spousal support.

On November 4, 2003, the trial court conducted a hearing on the merits of wife's bill of complaint. During the hearing, husband testified that he set up the checking account in both parties' names "[p]urely for convenience just so [wife] would be able to sign checks to pay bills" and that he set up the savings account as a joint account for the "[s]ame reason."[7] Husband also testified that wife co-signed the mortgage and the loans on the vehicles because "she didn't have any income to back up a loan and [his] credit was not in good enough shape to get the loan by [himself] even with [his] income."

During closing arguments, wife contended that almost all of the parties' assets— including the marital residence and the two vehicles—should be equitably distributed, arguing that "the way the money was handled would allow the Court to infer intent on Mr. Robinson's part to make a gift." Husband, in contrast, argued that simply retitling separate property is insufficient evidence of donative intent and, thus, the bulk of the parties' estate constituted husband's separate property.

At a hearing conducted on January 13, 2004, the court awarded wife a divorce *a vinculo matrimonii* on the grounds of separation for one year. As for classification of the parties' assets, the court found as follows:

> I find that while Mr. Robinson clearly made all or almost all of the monetary contributions to the marriage, the wife, Mrs. Robinson, did make significant nonmonetary contributions. To me, the logical conclusion of the husband's argument that since he could trace his monetary contributions to all of the assets of the marriage, thus they should be his, would mean that in every marriage where

---

[7] Similarly, at an earlier deposition, husband testified that "convenience is the only reason [they set up the accounts] that way."

- 4 -

> the wife does not work and produce income, she would not be able to share in any of the assets accumulated during the marriage.
>
> So to me, while it's clear most of the assets of the marriage were purchased with moneys obtained solely from the husband's trust proceeds and I would concede could be traced as contemplated by statute, it's equally clear to me that Mrs. Robinson deserves a share in a portion of those assets based on the factors. To me, just because it came from a trust fund – the parties considered it as their income. To me, it's just the same as if Mr. Robinson was actually earning that money on a monthly – on a yearly basis.

Thus, the court ordered the marital home to be sold and the proceeds divided between the parties.[8] The court also ordered that wife should receive one-half of the $244,137.16 that husband withdrew from the savings, reasoning that "such funds were there and available, regardless of the source of those funds, largely through the efforts of Mrs. Robinson to bring Mr. Robinson's spending habits under control and to better manage their income. I believe she is entitled to half of it, which is $122,069." The court also ordered husband to pay wife an additional $5,368, reasoning that, on the date of separation, husband withdrew $38,886 from the joint checking account and left wife $27,610, resulting in a difference of $11,276, of which the court believed wife was entitled to half.[9]

The trial court also awarded wife the Ford Excursion and ordered husband to pay off the remaining debt on the vehicle. The court awarded husband the F-350. Finally, the court ordered husband to pay $3,500 a month in spousal support from February 1, 2004 until July 1, 2005, reasoning that a limited period of spousal support was warranted because the marriage was of relatively short duration. The court also noted that "the award made [to wife during] the

---

[8] As of the date of the hearing, the appraised value of Bleak House was $470,000, the Ford Excursion was valued at $32,000, and the Ford F-350 was valued at $28,000.

[9] Although husband left $30,000 in the account, wife testified that several outstanding checks reduced the actual balance to $27,610.

equitable distribution was significant, especially considering monetary contributions by the husband and lack thereof by the wife," concluding that wife did not need spousal support for an extended period because she "is receiving approximately a quarter of a million dollars in marital assets when the evidence shows she brought very little to the table in the first instance."[10]

After the hearing, husband moved to reconsider, arguing that "the Court's finding that all of the property would be considered marital, notwithstanding its further finding that Mr. Robinson had met his burden of retracing his separate contributions to the property, was in error." Husband reasoned that "it was undisputed that Mr. Robinson's trust and the income from that trust were his separate property, acquired by him by inheritance long before the parties' marriage."

The trial court denied husband's motion to reconsider, holding that,

> [w]hile the property of Mr. Robinson came into the marital
> partnership as separate property . . . Mrs. Robinson contributed
> significantly to the "maintenance" and "preservation" of the asset.
> It was, and is still, my belief that there would have been no asset to
> divide but for the efforts of Mrs. Robinson and I think she should
> be allowed to share in the same to the extent ordered in the court's
> ruling.

Husband appeals.

---

[10] Wife did not cross-appeal the trial court's limited award of spousal support, nor did she request that, in the event the equitable distribution award is remanded, this Court remand the spousal support award for reconsideration as well. However, we note that the final decree expressly reserves the parties' right "to petition the Court for a modification of the amount of spousal support upon a showing of a material change in circumstances." And, contrary to the implication contained in the dissent, nothing in this opinion precludes wife from requesting a modification of spousal support if, on remand, the trial court determines that husband did not gift wife with a share of his trust income and reduces (or eliminates) the equitable distribution award accordingly. Cf. Thomasson v. Thomasson, 225 Va. 394, 397 n.1, 302 S.E.2d 63, 65 n.1 (1983) (noting that the absence of "an express reservation, in the final decree, of the court's power to fix and modify spousal support in the future as changed circumstances might thereafter require" has the effect "of foreclosing the wife from petitioning the court . . . for a future award in light of changed circumstances"). Thus, the inclusion of this provision in the final decree eliminates any need to remand the spousal support award for reconsideration *sua sponte*.

## II.  ANALYSIS

On appeal, we view the evidence in the light most favorable to wife, the party prevailing below.  Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  Also, because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it.  McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994); Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).

Husband contends that the trial court erred in classifying the bulk of the parties' assets— including the marital residence and the joint bank accounts—as marital property.  Husband reasons that he successfully traced all of the assets to his trust income, which constitutes his separate property.  Because wife did not present clear and convincing evidence that husband gifted wife with any of these items, he concludes that the trial court erred when it determined that wife was entitled to a share of these assets.  For the reasons that follow, we agree and reverse the judgment below.

### A.

The equitable distribution statute "'is intended to recognize a marriage as a partnership and to provide a means to divide equitably the wealth accumulated during and by that partnership based on the monetary and non-monetary contributions of each spouse.'"  von Raab v. von Raab, 26 Va. App. 239, 245, 494 S.E.2d 156, 159 (1997) (quoting Williams v. Williams, 4 Va. App. 19, 24, 354 S.E.2d 64, 66 (1987)).  However, "[e]quitable distribution deviates from traditional views of property ownership in that 'whether the property is separate or marital is determined by the statutory definition and is not determined by legal title.'"  Lightburn v. Lightburn, 22 Va. App. 612, 616, 472 S.E.2d 281, 283 (1996) (quoting Garland v. Garland, 12 Va. App. 192, 195, 403 S.E.2d 4, 6 (1991)).  Thus, before an equitable distribution award may be

entered, the court must classify the parties' assets as "marital," "separate," or "part separate and part marital." See Code § 20-107.3(A).

Property acquired during the marriage is presumptively marital, unless shown to be separate property. See Code § 20-107.3(A)(2)(iii); see also Rahbaran v. Rahbaran, 26 Va. App. 195, 209, 494 S.E.2d 135, 142 (1997); Barnes v. Barnes, 16 Va. App. 98, 104, 428 S.E.2d 294, 299 (1993) ("[P]roperty acquired during the marriage is presumed to be marital and property acquired before marriage is presumed to be separate."). Because the majority of the parties' assets were acquired during the parties' marriage, husband had the burden of proving that those assets constitute his separate property. See von Raab, 26 Va. App. at 248, 494 S.E.2d at 160.[11]

According to Code § 20-107.3(A)(1), separate property includes, *inter alia*, "all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party," as well as "all property acquired during the marriage in exchange for or from the proceeds of the sale of separate property, provided that such property acquired during the marriage is maintained as separate property." Also, "[i]ncome received from separate property during the marriage is separate property if not attributable to the personal effort of either party," and "[t]he increase in value of separate property during the marriage is separate property," unless that increase is both "substantial" and attributable to significant "personal efforts" of either party, in which case the increase in value—and only that increase in value—"is to be considered marital property." Id.; see also Code § 20-107.3(A)(3).

---

[11] Not all of the property the court classified as marital was acquired "during the marriage." For example, the court classified a station wagon that husband acquired from a prior marriage—and that was titled solely in his name—as marital property, and then distributed that station wagon to husband. Because this vehicle is presumptively husband's separate property, wife bore the burden of proving that an identifiable portion of the parties' equity in the station wagon constituted marital property because, for example, "marital funds were used to discharge the loans" on the vehicle. Gilman v. Gilman, 32 Va. App. 104, 119, 526 S.E.2d 763, 770 (2000).

Marital property, in contrast, includes "all property titled in the names of both parties," unless one of the exceptions contained in Code § 20-107.3(A)(3) applies. As pertinent here, Code § 20-107.3(A)(3) provides that:

> In the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property.

Code § 20-107.3(A)(3)(a); see also Code § 20-107.3(A)(1). Also, if "marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property." Code § 20-107.3(A)(3)(e). However, "to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification." Id. Similarly, "[w]hen separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property," unless the separate property "is retraceable by a preponderance of the evidence and was not a gift," in which case that asset "shall retain its original classification." Code § 20-107.3(A)(3)(f).

### B.

Neither party disputes that husband's trust income constitutes his separate property. See Code § 20-107.3(A)(1) (defining "separate property" to include "all property acquired during the marriage by bequest, devise, descent, [or] survivorship," as well as "[i]ncome received from separate property during the marriage"). Also, wife has not cross-appealed the trial court's finding that husband carried his burden of proving that almost all of the parties' assets "could be

[re]traced [to husband's trust income] as contemplated by the [equitable distribution] statute."[12] Thus, assuming, as we must, that husband carried his burden of retracing the assets to his separate property, wife had the burden of proving that those assets were marital property. See von Raab, 26 Va. App. at 248, 494 S.E.2d at 160 (citing Lightburn, 22 Va. App. at 617, 472 S.E.2d at 283).

Wife advances two arguments in support of her position that the trial court correctly classified the assets as marital property. First, she contends that the trial court correctly determined that husband "gifted" wife with a portion of his trust income. Second, wife contends that, "but for" her decision to take control of husband's finances, husband would have squandered his trust income. Thus, wife concludes that the money the parties saved during the marriage (and all assets purchased with that money) resulted from her "personal efforts" and, thus, should be classified as marital property.[13] We disagree.

---

[12] By holding that husband carried his burden of proving retraceability, the trial court implicitly concluded that all of the money in the bank accounts, as well as the money used to purchase the parties' assets, was derived from husband's trust income. Although wife testified that she received approximately $500 a month in child support, she admitted that she used that $500 exclusively to support her children. Accordingly, the trial court could reasonably have inferred that none of wife's child support money—which would have been her separate property—was used to purchase any of the parties' assets.

[13] Wife contends that husband "only addresses the first of these two findings or issues, that is, the issue of gift," concluding that husband is procedurally barred from challenging the second aspect of the trial court's ruling, specifically, whether wife's "personal efforts" increased the value of his trust income. However, husband raised this objection before the trial court in his motion to reconsider, and, in pages 13-15 and 18-19 of his opening brief, he clearly addresses the issue. Also, the issue of whether the trial court erred in holding that husband's trust income should be classified as marital property because wife "preserved and maintained" that income is encompassed by husband's "Question Presented," which broadly asserts that the trial court "erred in classifying and dividing property as marital even though it found the same to have been purchased with the proceeds of Husband's admittedly separate estate." Thus, we find no merit in wife's argument that husband is procedurally barred from addressing the issue.

- 10 -

1.  <u>The Trial Court Did Not Find that Husband Gifted Wife with a Share of the Assets</u>

As a general rule, "all property titled in the names of both parties" should be classified as marital property. Code § 20-107.3(A)(2). This presumption also applies "[w]hen separate property is retitled in the joint names of the parties." Code § 20-107.3(A)(3)(f). However, if the jointly-titled asset (or an identifiable portion of that asset) "is retraceable by a preponderance of the evidence" to a separate asset, and the jointly-titled property "was not a gift," then the portion of the asset retraceable to the separate property "shall retain its original classification." <u>Id.</u>

Here, the trial court found—and wife does not contest—that husband carried his burden of proving that a majority of the parties' assets—including the home, the two vehicles, and the bank accounts—were retraceable to his trust income. Thus, those assets retained their separate character unless wife carried her burden of proving that the assets were "a gift." <u>See id.</u>; <u>see also</u> <u>Utsch v. Utsch</u>, 266 Va. 124, 128, 581 S.E.2d 507, 508 (2003) ("The burden of proof that the transfer was a gift is upon the party seeking to establish the gift."); <u>Cirrito v. Cirrito</u>, 44 Va. App. 287, 303, 605 S.E.2d 268, 275-76 (2004) ("The burden of proof that the transfer was a gift is upon the party seeking to establish the gift by clear and convincing evidence."); <u>Theismann v. Theismann</u>, 22 Va. App. 557, 565-66, 471 S.E.2d 809, 813 (noting that, if separate property is retitled in the names of both spouses, the non-owning spouse must "prove the existence of a gift"), <u>aff'd on reh'g en banc</u>, 23 Va. App. 697, 479 S.E.2d 534 (1996).

No presumption of gift arises from husband's decision to title his separate property in both parties' names. <u>See</u> Code § 20-107.3(A)(3)(g); <u>Utsch</u>, 266 Va. at 128, 581 S.E.2d at 508; <u>Rowe v. Rowe</u>, 24 Va. App. 123, 134, 480 S.E.2d 760, 765 (1997) ("The fact that property is jointly titled must be considered by the trial court in determining if a gift was made, but alone, it is insufficient proof of a gift."); <u>Lightburn</u>, 22 Va. App. at 616-17, 472 S.E.2d at 283 ("Virginia does not presume a gift simply by virtue of jointly titling or retitling property."). Rather, to

- 11 -

establish the existence of a gift, wife was required to prove, by clear and convincing evidence, the following three elements: "(1) the intention on the part of the donor to make the gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee." Theismann, 22 Va. App. at 566, 471 S.E.2d at 813; see also Utsch, 266 Va. at 128, 581 S.E.2d at 509; Cirrito, 44 Va. App. at 303, 605 S.E.2d at 276. Here, husband argues that wife failed to prove the first element, specifically, "his donative intent and the nature and extent of that intent." Cirrito, 44 Va. App. at 303, 605 S.E.2d at 276.

During the equitable distribution hearing, wife testified that the parties considered the trust income to be "their" property. Also, on cross-examination, husband conceded that he had previously stated that he intended to make wife a "co-owner" of the bank accounts. However, husband also consistently testified that he created the joint bank accounts purely as a matter of convenience, and he denied intending to gift wife with a portion of his trust income or with a share of the jointly-titled assets purchased with that income.

The trial court did not expressly resolve this conflicting testimony, merely noting that "the parties considered it as their income . . . it's just the same as if Mr. Robinson was actually earning that money on a monthly – on a yearly basis." As husband argues, this comment is not equivalent to holding that wife proved husband's donative intent by clear and convincing evidence. Although, unquestionably, "[i]ntent is a question to be determined by the fact finder," Cirrito, 44 Va. App. at 305, 605 S.E.2d at 276, this Court cannot uphold a factual finding that simply does not exist.

Moreover, it is apparent that the trial court did not base its decision on a finding that husband gifted wife with a portion of his trust income. In its initial ruling on the merits, the trial court held that, based on wife's non-monetary contributions, wife "deserves a share in a portion of [the parties'] assets." Similarly, in its denial of husband's motion to reconsider, the trial court

- 12 -

reasoned that wife was entitled to a share of the bank accounts and the assets purchased with the trust income because she "contributed significantly to the 'maintenance' and 'preservation' of the [trust income]." Absent from the court's ruling is any mention of a "gift" or an express or implied finding that wife carried her burden of proving husband's donative intent by clear and convincing evidence.[14] Accordingly, we agree with husband that the trial court did not make the requisite findings to support a conclusion that husband gifted wife with a portion of his trust income.

2. The Assets Did Not Increase in Value as a Result of Wife's "Personal Efforts"

As noted above, if a separate asset increases in value during the marriage, Code § 20-107.3(A)(3)(a) authorizes the trial court to classify that increase in value as marital property, but only to the extent that the increase "is attributable to the personal efforts of either party."[15] In order for this rule to apply, the "personal efforts" of the contributing spouse "must be significant and result in substantial appreciation of the separate property." Id.; see also Code § 20-107.3(A)(1). Also, "[s]eparate property that has appreciated in value due to forces other than either party's efforts, such as passive appreciation or the personal efforts of others, remains separate property." Congdon, 40 Va. App. at 267, 578 S.E.2d at 839; see Hart v. Hart, 35 Va. App. 221, 544 S.E.2d 366 (2001) ("A party is entitled to the passive growth of [his] separate property . . . ."); see also Martin v. Martin, 27 Va. App. 745, 751, 501 S.E.2d 450, 453 (1998) (en banc); Rowe, 24 Va. App. at 134, 480 S.E.2d at 765.

---

[14] Although the trial court was not required to use any "magic words" to find that husband gifted wife with a portion of his trust income, the language used by the court must contain *some* language from which a finding of donative intent, delivery, and acceptance could be inferred.

[15] "Personal effort" is defined as "labor, effort, inventiveness, physical or intellectual skill, creativity, or managerial, promotional or marketing activity applied directly to the separate property of either party." Code § 20-107.3(A)(3)(a).

- 13 -

Neither party disputes that husband carried his burden of proving that the trust income constitutes his separate property. Thus, the burden of proof shifted to wife to demonstrate: (1) that she contributed "marital property or personal effort" to the trust income, and (2) that, as a proximate result of her contributions, "the separate property increased in value." Code § 20-107.3(A)(3); see also Cirrito, 44 Va. App. at 296-97, 605 S.E.2d at 272-73; Congdon, 40 Va. App. at 267-68, 578 S.E.2d at 839; Bchara v. Bchara, 38 Va. App. 302, 314-15, 563 S.E.2d 398, 404 (2002); Martin, 27 Va. App. at 753, 501 S.E.2d at 454 ("[T]he increase in value of the retraceable separate funds shall be separate unless the non-owning party proves that all or a portion of the increase was due to the contribution of marital funds or significant personal effort.").

Wife contends that she met her burden of proof because, as a result of her "personal efforts" to control the parties' finances, husband saved a portion of his trust income in the joint bank accounts. Thus, she concludes that the saved income—and the assets purchased and financed with that income—should be classified as marital property. In this vein, wife's argument parallels the trial court's ruling that wife's "significant" contribution "to the 'maintenance' and 'preservation'" of husband's trust income should entitle her to a share of the parties' assets.

However, although the "increase in value" of separate property may be classified as marital property if attributable to either party's "personal efforts," the underlying asset itself does not lose its separate character. See Code § 20-107.3(A)(3)(a). Here, then, if the trust income "increased in value," for example, by earning investment income, that increase in value could potentially be classified as marital property. However, the trust income itself retained its separate character and could not be reclassified regardless of whether wife's "personal efforts" enhanced the value of that asset.

Here, with the exception of any passive interest that may have been generated, placing the trust income into a savings account did not increase the "value" of the income. The decision to save a portion of husband's trust income merely prevented that income from being spent on another asset. "Preserving" and "maintaining" an asset is not necessarily equivalent to enhancing the value of that asset. Cf. Bchara, 38 Va. App. at 316, 563 S.E.2d at 405 (noting that, "even if husband's [actions] saved money, those efforts are not the type of 'personal efforts' required to transmute a portion of separate property into joint property"). Because there is no evidence that wife's "personal efforts" actually caused the separate asset to "increase in value," Code § 20-107.3(A)(3)(a) and 20-107.3(A)(1) are inapplicable. See id. at 315, 563 S.E.2d at 404 ("'The significant factor, however, is not the amount of effort or funds expended, but rather the fact that value was generated or added by the expenditure or significant personal effort.'" (quoting Gilman v. Gilman, 32 Va. App. 104, 120, 526 S.E.2d 763, 771 (2000))); Hart v. Hart, 27 Va. App. 46, 66, 497 S.E.2d 496, 505 (1998) ("It is the value that [the personal efforts] add to the property . . . that is the proper consideration.").[16]

Moreover, "[w]hen marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution." Code § 20-107.3(A)(3)(d). Here, because "the record contains no evidence of the value of wife's contributions" in managing and administering husband's trust income, "her contributions were transmuted into husband's separate property

_____

[16] It is also questionable whether wife's conduct actually constitutes a "personal effort" within the meaning of the equitable distribution statute. As we have noted, the statute "contemplates a significant personal effort that substantially affects the value of property, *not merely a joint decision that may have been influenced by one spouse*." Martin, 27 Va. App. at 755, 501 S.E.2d at 455 (emphasis added).

- 15 -

when they were commingled with husband's separate property." Rowe, 24 Va. App. at 136, 480 S.E.2d at 766 (holding that, where wife failed to produce any evidence relating to the "value" of the "time and energy" she spent refurbishing a home that was husband's separate property, those efforts also became husband's separate property); cf. Courembis v. Courembis, 43 Va. App. 18, 39, 595 S.E.2d 505, 516 (2004) (rejecting wife's argument that "her management of husband's separate funds is evidence that husband did not maintain [those funds] as separate property"). Thus, because the record contains no evidence relating to the "value" of wife's efforts to "preserve and maintain" husband's trust income, those efforts did not transmute husband's separate property into marital property but, instead, were absorbed into and became part of his separate property. See Rowe, 24 Va. App. at 136, 480 S.E.2d at 766; see also Bchara, 38 Va. App. at 315, 563 S.E.2d at 404 ("The record should include evidence of the monetary value of the non-owning spouse's personal efforts . . . .").

For these reasons, we hold that the trial court clearly erred in classifying the joint bank accounts containing husband's trust income as marital property. Absent a finding that husband gifted a portion of his trust income to wife, those accounts remained his separate property. And, because the trial court found that husband carried his burden of proving retraceability, the court clearly erred in classifying the assets purchased and financed with husband's separate property—including Bleak House and the two vehicles—as marital property.[17] We therefore reverse and

---

[17] The trial court did not find, nor do we address, whether the $90,000 appreciation in the value of Bleak House should be classified as marital property because it was attributable to an expenditure of marital funds or the "personal efforts" of the parties rather than passive market factors. See generally Moran v. Moran, 29 Va. App. 408, 413, 512 S.E.2d 834, 836 (1999) (husband's evidence that $30,000 in marital funds were used to renovate the marital residence— wife's separate property—was insufficient to prove that the home's increase in value should be classified as marital property because the evidence "failed to prove the extent to which the 'contributions' of marital funds to the renovations caused any of the home's appreciation in value").

remand the equitable distribution award for reconsideration in light of the holding of this opinion.[18]

## C.

Both parties request that this Court award the costs and attorneys' fees incurred on appeal. See generally O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Because this litigation "addressed appropriate and substantial issues," and "neither party generated unnecessary delay or expense in pursuit of its interests," Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004), we deny both parties' requests for attorneys' fees and costs.

## III. CONCLUSION

For these reasons, we hold that the trial court clearly erred when it classified the parties' assets as marital property notwithstanding its conclusion that husband sustained his burden of proving retraceability. Accordingly, we reverse the equitable distribution award in its entirety and remand the case for reconsideration. We also decline to award either party the cost of their attorneys' fees on appeal.

Reversed and remanded.

---

[18] The trial court's concern, specifically, that this outcome "would mean that in every marriage where the wife does not work and produce income, she would not be able to share in any of the assets accumulated during the marriage," is without merit. In most cases, the money earned by the parties during the marriage constitutes marital property, and the assets purchased with that income are also marital property. See Code § 20-107.3(A)(2) (defining "marital property" as, *inter alia*, all property "acquired by each party during the marriage which is not separate property"). Regardless of whether the wife worked outside the home, she would therefore be entitled to a share of those assets. See Code § 20-107.3(E). The situation presented in this case—where one spouse's separate property functions as the sole source of income throughout the marriage—is readily distinguishable.

- 17 -

Elder, J., dissenting.

I disagree with the majority on two grounds. First, I believe that an appeal of an equitable distribution award implicitly includes an appeal of the interrelated spousal support award. Thus, on reversal of an equitable distribution award, the trial court must reconsider its spousal support award, regardless of whether either party has expressly assigned error to that award. Second, I believe the evidence is sufficient to support a finding that husband made a gift of his trust fund money to wife and that the trial court's ruling included an implicit finding to that effect. Thus, I would affirm the trial court's decision, and I respectfully dissent.

I.

SCOPE OF REMAND

Code § 20-107.1(E)(8) requires that a court making a spousal support award must consider any equitable distribution award made pursuant to Code § 20-107.3. Where the equitable distribution award is appealed and the court orders that "the provisions with regard to the marital property are to be considered on remand, the court must necessarily re-examine spousal support in the light of whatever new or different considerations flow from the additional proceedings." McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 161 (1985).

Here, husband appealed the trial court's equitable distribution ruling made pursuant to Code § 20-107.3. Implicit in the scope of husband's appeal was that a reversal of the equitable distribution award on appeal would require the trial court to reconsider the spousal support award. Cf. Morris v. Morris, 3 Va. App. 303, 311, 349 S.E.2d 661, 665 (1986) (where wife appealed equitable distribution award, husband appealed spousal support award, and Court found error only in equitable distribution award, holding Court "must vacate . . . spousal support" award because "in determining spousal support the trial court must consider provisions made regarding marital property"). Wife, who was not aggrieved by the spousal support award, had no

- 18 -

duty to note a separate appeal of that award.  Thus, reversing the equitable distribution award

requires the concomitant vacating of the spousal support award and a remand to the trial court

with directions to reconsider the spousal support award.  This approach is particularly important

in a case such as this one, in which the trial court specifically noted its award of spousal support

for a defined duration was based in part on the size of the equitable distribution award it had

allotted to wife, an award the majority has held was made erroneously.

II.

EVIDENCE OF GIFT

I also disagree with the majority because I believe the evidence was sufficient to support

the equitable distribution award.

The parties married on November 22, 1999, and on December 15, 1999, they opened a

joint checking and a joint savings account.  Husband's monthly trust income was electronically

deposited into the joint checking account.  Husband admitted on deposition that "it was [his]

intent that [wife] would be *co-owner* of the [parties' joint checking] account."  (Emphasis

added).  The parties placed excess amounts from the joint checking account into the joint savings

account, and they made all purchases and paid all bills from these accounts.  Despite receiving

approximately $50,000 per month from his trust fund, husband had never had a savings account

and was heavily in debt at the time of the parties' marriage.  Wife testified it "was a given" that

she would handle the trust funds during the parties' marriage, and she wrote almost all the

checks from the account during the marriage.  When the parties purchased the marital residence,

they did so with funds from the joint savings account, with the exception of a cash advance on

wife's credit card, which debt was subsequently paid with money from husband's trust fund.

Wife co-signed the note for the property.  Wife also co-signed for the purchase of the

automobiles the parties bought during their marriage.  Husband conceded that he could not have

- 19 -

financed the purchase of the home alone because of his poor credit history and that wife could

not have purchased the property or vehicles alone because she lacked sufficient income.

Husband argued as follows:

> [Wife] never testified that [husband] intended to make a
> gift to her of those sums of money.  Simple retitl[ing] in and of
> itself is not evidence of an intent to change unless it was a gift, and
> [wife] never testified it was a gift.  She never testified it was done
> with an intent, never testified of any discussions.

> \*     \*     \*     \*     \*     \*     \*

> . . . [Husband] testified it was for convenience purposes, the
> checking account so she could write the checks and the savings
> account because the bank said you have to have them the same
> way.  *If the Court believes that testimony*, then we stop there.  It's
> his separate property.

(Emphasis added).

Wife responded, "There is a direct conflict in the testimony between [husband] and

[wife]," and "[wife's] credibility is firm."  Wife disputed husband's position, expressly arguing

to the court that

> the way the money was handled would allow the Court to infer
> intent on [husband's] part to make a gift.

> Every month, the money is put into a joint checking
> account.  [Wife] has the power to write checks for the entire
> amount.  [Wife] could have gone to the bank and withdrawn [the
> entire balance], and she would have been entitled to do that.  She
> had the right to exercise complete control over his accounts and
> she did so.  The evidence was she paid most bills.  Now, in light of
> those circumstances, Judge, I think the Court should consider
> finding these transferred from separate into marital . . . .

The trial court expressly "accept[ed]" wife's proposed classifications of the disputed

property.  It also noted that although husband successfully retraced the sums contributed from his

trust fund, "the parties considered [those sums] as *their* income."  (Emphasis added).  The trial

court treated those sums "as if [husband] was actually earning that money."  On the issue of

"distributing the marital property," the court "[found] that while [husband] clearly made all or almost all of the monetary contributions to the marriage, [wife] did make significant nonmonetary contributions." It divided evenly between the parties the marital residence and joint accounts.

Husband filed a motion to reconsider, arguing the court erred in classifying as marital the funds he had retraced to his separate property. The trial court denied the motion, reasoning that although the trust funds

> came into the marital partnership as separate property[,] . . . [wife] contributed significantly to the "maintenance" and "preservation" of the asset. It was, and still is, my belief that there would have been no asset to divide but for the efforts of [wife,] and I think she should be entitled to share in the same to the extent ordered in the court's ruling.

On appeal,

> "we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below. . . ." The trier of fact ascertains [witnesses'] credibility, determines the weight to be given their testimony, and has the discretion to accept or reject any of the [witnesses'] testimony[, in whole or in part].

Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc) (quoting Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). The trial court is presumed to know and properly apply the law "absent clear evidence to the contrary in the record." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977).

In making an equitable distribution award, the trial court must classify disputed property as separate, marital or hybrid property and must value and divide property as requested by the parties. See Stumbo v. Stumbo, 20 Va. App. 685, 693, 460 S.E.2d 591, 595 (1995). However, beyond these basic requirements, the trial court need not make specific findings of fact to support the equitable distribution. As long as the record supports the result, the court need not quantify

the weight it gave to each factor. E.g. Marion v. Marion, 11 Va. App. 659, 664, 401 S.E.2d 432, 436 (1991). Compare Code § 20-107.1 (requiring, *inter alia*, that "[i]n contested cases in the circuit courts, any order granting, reserving or denying a request for spousal support shall be accompanied by written findings and conclusions of the court identifying the factors in subsection E which support the court's order").

"If [a] party claiming a separate interest in . . . transmuted property proves retraceability," as husband did here, "the burden shifts to the other party to prove that the transmutation of the separate property resulted from a 'gift.'" von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997). The party claiming the existence of a gift must prove by clear and convincing evidence "(1) intention on the part of the donor to make a gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee." Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). Per Code § 20-107.3(A)(3)(g), "no presumption of gift arises from the fact that the property was retitled." Id. at 565, 471 S.E.2d at 813. Thus, evidence of joint titling, standing "alone, . . . is insufficient proof of a gift," but proof "that property is jointly titled must be considered by the trial court in determining if a gift was made." Rowe v. Rowe, 24 Va. App. 123, 137, 480 S.E.2d 760, 766 (1997).

The majority focuses on husband's argument that wife failed to prove the first element--that husband had the requisite donative intent. Donative intent, like any other type of intent, may be proved by circumstantial evidence, see, e.g., Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988), such as a person's conduct and statements, see Polk v. Commonwealth, 4 Va. App. 590, 594, 358 S.E.2d 770, 773 (1987). I believe this is merely "a standard of review case," see Cirrito v. Cirrito, 44 Va. App. 287, 305, 605 S.E.2d 268, 277 (2004), and that the evidence, viewed in the light most favorable to wife, supports the trial

- 22 -

court's implicit finding, by clear and convincing evidence, that husband acted with the requisite intent to gift to wife the trust funds deposited in the parties' joint checking account.

Although husband claimed at trial he had wife's name put on the joint checking and savings accounts merely for purposes of convenience, he also testified he did so with the "intent that [wife] would be *co-owner* of the [parties' joint checking] account." (Emphasis added). The trial court was entitled to reject husband's testimony that he made wife a co-owner of the property solely for convenience and to conclude that, by doing so, he gifted to her the contents of that account. See also Utsch v. Utsch, 266 Va. 124, 128-29, 581 S.E.2d 507, 509 (2003) (stating that evidence need only establish that the transfer was a gift and not "that a gift was intended for a[ny] particular purpose"). But see Cirrito, 44 Va. App. at 306, 605 S.E.2d at 277 (concluding that quoted language from Utsch was *dicta*). Nothing in the relevant statutes or case law requires that the trial court's rejection of husband's testimony or finding of a gift had to be express as long as clear and convincing evidence supported its classification of the property as marital. Because the evidence supported the implicit finding that husband made a gift to wife of the trust funds deposited in the joint checking account, the evidence supported a finding that the home and cars, purchased with funds from the joint accounts, were marital, as well.

Although the trial court referred to husband's monetary and wife's non-monetary contributions to the marriage, nothing in the record compels the conclusion that it considered these contributions as relevant to anything other than how to divide the property it had concluded was marital. Statements by the trial court in making the equitable distribution and denying husband's motion for reconsideration to the effect that wife's efforts to control husband's spending habits resulted in their accumulating savings of approximately $244,000 do not compel a different result. The trial court did not state that this was the basis for its classification ruling,

and this information was clearly relevant to its determination of how much of a share of the particular marital asset wife was entitled to receive.

III.

For these reasons, I would affirm the trial court's award, and I respectfully dissent.