COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Chafin and Senior Judge Coleman
Argued at Richmond, Virginia


JAMES LEONARD PARSONS

v.      Record No. 0521-14-2

ANN GALLIER PARSONS                                    MEMORANDUM OPINION[*] BY
                                                       JUDGE TERESA M. CHAFIN
                                                       DECEMBER 9, 2014
ANN GALLIER PARSONS

v.      Record No. 0548-14-2

JAMES LEONARD PARSONS


FROM THE CIRCUIT COURT OF GOOCHLAND COUNTY
Timothy K. Sanner, Judge

Joseph E. Blackburn, Jr. (Blackburn, Conte, Schilling & Click, P.C.,
on briefs), for James Leonard Parsons.

J. Thompson Cravens (David Paul Morgan; Cravens & Noll, PC,
on briefs), for Ann Gallier Parsons.


James Leonard Parsons ("husband") and Ann Gallier Parsons ("wife") appeal the

equitable distribution and spousal support rulings from their final decree of divorce. On appeal,

husband contends that the Circuit Court of Goochland County ("circuit court") erred by finding

that his income was $40,000 per month and by awarding wife spousal support in the amount of

$10,000 per month based on the erroneous calculation of his income. Husband also argues that

the circuit court erred by classifying certain real estate parcels he inherited from his mother as

marital property and by not finding that at least a portion of the parties' river house was his

separate property. Wife argues that the circuit court erred by awarding her "only a 25% share of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the equity" of the parties' marital commercial rental property.[1]  She also contends that the circuit

court erred in determining that husband's income was $40,000 per month because the evidence

presented established that husband "received a minimum of $80,000 per month in gross income

from various sources."  For the reasons that follow, we affirm the circuit court's decision.

## I.  BACKGROUND

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

Furthermore, under settled principles of appellate review, we view the evidence in the light most

favorable to the prevailing party in the trial court, granting to that party the benefit of any

reasonable inferences.  Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).

Thus, for these consolidated appeals, the evidence related to the issues raised in husband's appeal

is viewed in the light most favorable to wife and the evidence related to the issues raised in

wife's appeal is viewed in the light most favorable to husband.

The parties married on March 8, 1994, and separated on March 13, 2012.  Wife filed a

complaint for divorce, to which husband filed an answer and cross-complaint.  On May 30 and

31, 2013, the circuit court heard evidence *ore tenus* on the issues of equitable distribution,

spousal support, and the grounds for divorce.

---

[1] Wife also argues that the circuit court abused its discretion by failing to consider each
factor listed in Code § 20-107.3(E) in reaching its equitable distribution decision.  Wife,
however, failed to raise this issue with the circuit court.  While wife noted her objections to the
circuit court's award in the final decree of divorce, she did not object on these grounds.  Wife
never contended that the circuit court failed to consider any of the factors listed in Code
§ 20-107.3(E).  She only objected to the percentage of value the circuit court awarded her from
the parties' commercial rental properties.  Therefore, we will not consider this argument on
appeal.  See Rule 5A:18; see also Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d
484, 488 (1998) (We "will not consider an argument on appeal which was not presented to the
trial court.").

The evidence established that the parties were successful real estate investors who owned twenty-three properties at the time of their divorce. Husband inherited several of these properties from his mother. At the time of his mother's death, these properties were held by the Parsons Irrevocable Inter Vivos Trust. After reaching a settlement concerning how the properties would be distributed with his brother, husband's brother distributed the properties from the trust as the executor of his mother's estate. The husband's brother conveyed the properties from the trust to husband and wife as tenants by the entirety. The properties were then transferred by husband and wife to the Windsor Trust. The parties managed the properties through the Windsor Trust throughout their marriage, and received substantial income from them. They also leveraged these properties and other properties, including the marital home, throughout the marriage to obtain financing to purchase additional properties, including several apartment complexes.

Husband primarily managed the parties' real estate properties throughout the marriage. Wife, however, testified that she assisted husband by keeping records, collecting rents, discussing property maintenance and landscaping, and managing employees. Aside from these contributions, wife was unemployed throughout the vast majority of the marriage. The parties received substantial income from the management of their rental properties and enjoyed a high standard of living. Husband and wife paid their expenses primarily from various business accounts, and both parties had equal access to these funds.

During the divorce proceedings, husband argued that he intended to maintain the properties he inherited from his mother as his separate property. He testified that he never intended to give any portion of these properties to his wife. He claimed that he had judgment creditors from a previous business failure when he inherited the properties from his mother and that he only instructed his brother to convey the properties to him and his wife as tenants by the

entirety to protect the properties from these creditors. Accordingly, husband contended that the properties he inherited from his mother, 9420 Epson Downs Drive, 6425 Millhiser Avenue, 4808 Leonard Parkway, and nine lots in Middlesex County, were his separate property. He also argued that at least a portion of 480 Rockingham Road ("the river house") was his separate property because the parties acquired that property, at least partially, with the proceeds from the sale of another property he inherited from his mother.

Husband supported his claim concerning his need to protect the inherited properties from judgment creditors with the testimony of the attorney who advised him when the property was inherited and when it was transferred into the Windsor Trust. This attorney was a longtime business associate of husband and a social friend of both parties. The attorney testified that husband had judgment creditors from prior business dealings when he inherited the properties from his mother and that the properties were conveyed to husband and wife as tenants by the entirety to protect them from these creditors. The attorney testified that the properties were transferred to the Windsor Trust for estate planning purposes.

Wife denied any knowledge of husband's prior judgment creditors, and claimed that husband had the property conveyed to them as tenants by the entirety because he intended to share the property with her. Wife testified that husband wanted her to be involved in his business and that the property was considered a gift.

The parties presented conflicting evidence regarding husband's income. Husband submitted the parties' 2010 and 2011 tax returns into evidence. The 2010 tax return showed a total income of $218,166 and the 2011 tax return showed a total income of $248,863. Husband argued that this evidence established that his gross monthly income was approximately $20,000. Wife argued that the tax returns did not adequately reflect husband's actual monthly income because they did not fully account for rents husband received from the rental properties or the

- 4 -

personal expenses he paid directly from business accounts. Wife contended that husband earned much more than $20,000 per month, and asserted that his bank statements showed that he received income from other sources. Husband's bank statements were admitted into evidence. Wife requested $25,000 per month in spousal support.

After hearing the evidence and considering written closing arguments from the parties, the circuit court issued its ruling from the bench on November 19, 2013. The circuit court determined that all of the parties' real estate was marital property. The circuit court found that husband's testimony concerning the need to protect the inherited property from judgment creditors was not credible. The circuit court noted that husband failed to produce any evidence of the judgments that he claimed existed when he inherited the property and that husband's attorney was potentially biased in favor of husband due to their long-term business and social relationship.[2] The circuit court held that:

> [E]verything that the court has heard in this case suggests that husband was deeply in love with wife at the time these parcels were acquired, and that he wished to share everything he had with her. It appears to the court that husband throughout the course of the marriage was extremely generous both to wife and to his stepdaughter. Wife was not asked to sign any type of prenuptial agreement limiting her property rights. Wife was given signature authority on the checking accounts. Wife had seemingly unlimited authority to spend money as she wished. Nothing about the parties' relationship suggested that husband wished to keep anything of his away from wife.
> While Dean Parsons conveyed the multiple parcels to the property on behalf of the Parsons Irrevocable Inter Vivos Trust as a settlement of the interest between the two brothers, the court can only draw the inference that he would have conveyed title to those parcels in any fashion suggested by husband. The fact that the

---

[2] In preparation for the divorce proceedings in this case, husband's attorney informed two experts that testified on behalf of husband concerning the Windsor Trust and the parties' real estate holdings that the properties husband inherited from his mother were only conveyed to the parties as tenants by the entirety to avoid husband's judgment creditors. Accordingly, these experts assumed that husband had no donative intent when these properties were conveyed to husband and wife. The circuit court discounted the opinions of these experts to the extent that they relied on these representations from husband's attorney.

parcels were conveyed to husband and wife by tenants in the entirety can only lead the court to reasonably infer that husband wished for wife to share in his interest in these parcels.

The circuit court awarded the parties' commercial rental properties to husband and awarded wife twenty-five percent of their value based on its consideration of the factors listed in Code § 20-107.3. The circuit court held that "[t]he monetary contributions to the marriage were almost exclusively husband's" and "found it likely that wife was overstating the degree of her involvement in husband's real estate business." While the circuit court found that husband was active in maintaining the parties' properties and vehicles and that he assisted wife and her family in other nonmonetary ways, it inferred that "wife spent a good portion of her time spending money, pursuing leisure activities, and seeking to obtain a higher social status."[3] The circuit court awarded husband a disproportionate value of the marital commercial rental properties in light of these circumstances and "the fact that these properties were largely established via the acquisition of property husband had before the time of marriage, by gifts received from his relatives during the course of the marriage, and by husband's management of the properties during the course of the marriage." The circuit court also found that "it is likely in wife's best interest if husband continues to manage these parcels for income-producing purposes."[4]

Despite conflicting evidence from the parties, the circuit court determined that husband earned $40,000 per month. Although husband conceded that he earned approximately $20,000

---

[3] The circuit court also stated that "[w]ife projects a substantial sense of entitlement without substantial justification."

[4] The circuit court awarded wife fifty percent of the value of the nine lots in Middlesex County and a property husband acquired in Florida with marital funds after the parties' separation known as 129 Tranquilla. The circuit court awarded the parties' marital residence, 322 Wickham Glen Drive, to husband along with its accompanying debt. As the debt surpassed the value of this property, wife was not awarded a percentage of equity. Wife does not challenge the rulings concerning these properties on appeal. Likewise, neither party challenges the circuit court's rulings concerning the division of their personal property or the circuit court's valuation of the marital property.

per month, the circuit court concluded this figure was "substantially low." The circuit court found that "husband utilizes allegedly business accounts for personal purposes whenever the whim suits him" and "appears to underestimate or fail to account for rents received, and offers little documentation to support his contention of the amount of his principal payments." While the circuit court noted that "[h]usband's lack of candor in documentation regarding his financial affairs may have been at least partly successful in confusing the court about the true nature of his income," it concluded that fixing his gross monthly income at $40,000 would be "fairly conservative." The circuit court awarded wife spousal support for an indefinite period in the amount of $10,000 per month.[5]

Both parties disagreed with the circuit court's decision and appealed its holdings concerning equitable distribution and spousal support to this Court.

## II. ANALYSIS

On appeal, husband contends that the circuit court erred by classifying the property he inherited from his mother as marital property. While husband argues that these properties were his separate property, the circuit court classified these properties as marital because it found that husband intended to give wife an interest in them when he directed his brother to convey the properties to husband and wife as tenants by the entirety. The circuit court found that husband intended to share these properties with his wife and, therefore, that the properties were marital assets. This decision is supported by the circuit court's credibility determinations and the evidence of this case. Wife contends on appeal that the circuit court abused its discretion by only awarding her twenty-five percent of the value of certain marital rental properties. The circuit court's equitable distribution decision, however, is reasonable and supported by its consideration

---

[5] The circuit court imputed an annual income of $35,000 to wife based on the conclusions of a vocational expert who evaluated wife's employment prospects and earning potential. On appeal, wife only challenges the circuit court's determination of husband's income and its effect on the spousal support ruling.

of the circumstances of how the properties in question were acquired and managed during the marriage. While both parties challenge the circuit court's determination of husband's income on appeal, a review of the evidence establishes that the circuit court did not abuse its discretion by determining that husband earned $40,000 per month. The circuit court's determination of husband's income is supported by the financial evidence presented in this case.

## A. CLASSIFICATION OF THE PROPERTY INHERITED BY HUSBAND

"A trial court's decision, when based upon an *ore tenus* hearing, is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it." Lanzalotti v. Lanzalotti, 41 Va. App. 550, 554, 586 S.E.2d 881, 882 (2003). On appeal, we view the evidence in the light most favorable to wife, as she prevailed below on this issue, see Chretien v. Chretien, 53 Va. App. 200, 202, 670 S.E.2d 45, 46 (2008), and we grant to her "all reasonable inferences fairly deducible therefrom," Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). We further note that the circuit court's classification of property and determination of donative intent are findings of fact that will not be reversed on appeal unless they are plainly wrong or without evidence to support them. See Sfreddo v. Sfreddo, 59 Va. App. 471, 481, 720 S.E.2d 145, 150 (2012).

Code § 20-107.3(A)(1) defines separate property, in pertinent part, as "all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party" and "all property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property." Code § 20-107.3(A)(2), however, defines marital property, in pertinent part, as "all property titled in the names of both parties, whether as joint tenants, tenants by the entirety or otherwise, except as provided by subdivision A 3." Code § 20-107.3(A)(3)(f) states that "[w]hen separate property is retitled in the joint names of the parties, the retitled

- 8 -

property shall be deemed transmuted to marital property. However, to the extent the property is retraceable by a preponderance of the evidence *and was not a gift*, the retitled property shall retain its original classification." (Emphasis added).

A gift is "the voluntary transfer of property to another without compensation." Black's Law Dictionary 803 (10th ed. 2014). The party seeking to establish a gift bears the burden of proving by clear and convincing evidence that the transfer was a gift. See Utsch v. Utsch, 266 Va. 124, 128, 581 S.E.2d 507, 508 (2003). No presumption of gift arises by the act of retitling property jointly with another individual. Id.; see also Code § 20-107.3(A)(3)(h). To establish a gift, a party must prove: "'(1) the intention on the part of the donor to make the gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee.'" Robinson v. Robinson, 46 Va. App. 652, 666, 621 S.E.2d 147, 154 (2005) (*en banc*) (quoting Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996)).

"In order to prove an interspousal gift, the wife must prove the husband's donative intent and the nature and extent of that intent." Cirrito v. Cirrito, 44 Va. App. 287, 303, 605 S.E.2d 268, 276 (2004). Donative intent is a question to be determined by the factfinder. Id. at 305, 605 S.E.2d at 276. "Donative intent, like any other type of intent, may be proved by circumstantial evidence, such as a person's conduct and statements." Robinson, 46 Va. App. at 676, 621 S.E.2d at 159 (Elder, J., dissenting).

On appeal, husband contends that wife failed to prove that he intended to give her any interest in the properties he inherited from his mother. He claims that he had no donative intent when these properties were conveyed to him and his wife as tenants by the entirety. The circuit court, however, concluded that husband loved his wife and that he intended to share the property

he inherited with her.[6] The evidence presented in this case and the circuit court's credibility determinations support this conclusion.

The circuit court concluded that husband loved his wife when he inherited the properties in question from his mother and that he was very generous to his wife and her family throughout the marriage. Wife testified that husband considered the inherited properties to be gifts to both of them and that he wanted the parties to share the properties together. Wife also testified that husband wanted her "to be part of the business." The circuit court noted that wife had complete and unlimited access to the rental income produced by these properties during the parties' marriage and that husband commingled these funds with income from other marital properties. In essence, the circuit court concluded that husband made no distinction between the properties he inherited from his mother and other marital properties acquired during the marriage.

The circuit court also considered the fact that the inherited properties were conveyed to husband and wife as tenants by the entirety. Initially, husband and his brother inherited the properties in question from their mother together, with each brother receiving an equal share of each property. After agreeing to a settlement concerning the distribution of the inherited

---

[6] Husband contends that the circuit court did not actually make a finding concerning his donative intent, and cites Robinson, 46 Va. App. 652, 621 S.E.2d 147, to support his argument. In Robinson, this Court held that a circuit court "did not make the requisite findings to support a conclusion that husband gifted wife with a portion of his trust income." Id. at 667, 621 S.E.2d at 154. This Court observed that "[a]bsent from the court's rulings is any mention of a 'gift' or an express *or implied finding* that wife carried her burden of proving husband's donative intent by clear and convincing evidence." Id. (emphasis added). This Court concluded that the circuit court based its decision to award wife a portion of husband's trust income on her "maintenance and preservation" of that income. Id. at 666-67, 621 S.E.2d at 154. This Court then noted that "[a]lthough the trial court was not required to use any 'magic words' to find that husband gifted wife with a portion of his trust income, the language used by the court must contain *some* language from which a finding of donative intent, delivery, and acceptance could be inferred." Id. at 667 n.13, 621 S.E.2d at 154 n.13 (emphasis in original). While the circuit court in the present case did not expressly reference a "gift" from husband to wife, it concluded that "husband wished for wife to share in his interest in these parcels" because he loved her and wanted her to participate in his business. This decision implied a finding of husband's donative intent regarding the inherited property.

properties, however, husband directed his brother to convey the properties in question to him and wife as tenants by the entirety. Husband and his brother owned the properties together for almost a year before the brother conveyed them to husband and wife.[7] The circuit court inferred that the brother "would have conveyed title to those parcels in any fashion suggested by husband" and concluded that the conveyance of the property to husband and wife as tenants by the entirety suggested that husband intended to give a portion of those properties to his wife.

While evidence of joint titling, standing alone, is insufficient to prove donative intent, "[t]he fact that property is jointly titled must be considered by the trial court in determining if a gift was made." Rowe v. Rowe, 24 Va. App. 123, 137, 480 S.E.2d 760, 766 (1997). The fact that property is jointly titled may establish that a gift has been made when other circumstances demonstrating a party's donative intent concerning that property are present. See Theismann, 22 Va. App. at 565-66, 471 S.E.2d at 813 (husband retitled separate property in the parties' joint names, acknowledged that he wanted his wife to share the property, and referenced the property as "our home"). In the present case, the conveyance of the properties to husband and wife as tenants by the entirety, together with wife's testimony that husband considered the inherited properties as gifts to both parties and that he wished to share those properties with wife, as well as wife's subsequent access to the income generated by these properties, established husband's donative intent concerning the inherited properties.

Although husband testified that he had no donative intent concerning the inherited properties and claimed that they were only conveyed to the parties as tenants by the entirety to avoid preexisting judgment creditors, the circuit court did not find this testimony credible.[8] The

---

[7] Husband's mother died on December 28, 2000, and husband's brother conveyed the properties in question to husband and wife on November 27, 2001.

[8] A circuit court reached the opposite conclusion based on similar facts in Cirrito, 44 Va. App. 287, 605 S.E.2d 268. In Cirrito, a husband argued that he only titled separate property

- 11 -

circuit court noted that husband failed to present any evidence of the judgments against him beyond his own testimony and that of his attorney. Wife also testified that she was unaware of any judgments against husband when he inherited the properties or when those properties were transferred to the Windsor Trust. The circuit court found that husband's testimony concerning the existence of judgment creditors and other aspects of his business, such as his income, was "evasive and not worthy of belief." The circuit court also discounted the testimony of husband's attorney based on his potential bias in favor of husband resulting from their business and social relationship. Additionally, the circuit court discounted the opinions of husband's real estate and trust experts to the extent they relied on husband's and his attorney's representations concerning the existence of judgment creditors.

"It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*). "'In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of witnesses.'" Cirrito, 44 Va. App. at 304, 605 S.E.2d at 276 (quoting Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 795 (1997)). Accordingly, we will not set aside the circuit court's credibility determinations in the present case.

The circuit court's determination that husband intended to share the properties that he inherited from his mother with his wife is not plainly wrong or unsupported by the evidence. When the evidence is viewed in the light most favorable to wife, it supports the circuit court's

jointly with his wife to protect it from creditors. Id. at 302, 605 S.E.2d at 275. The circuit court believed the husband and found that the wife's testimony concerning her husband's donative intent was not credible. Id. at 303-04, 605 S.E.2d at 276. Therefore, the circuit court classified the property as husband's separate property. Id. at 304, 605 S.E.2d at 276. This Court affirmed the circuit court's decision based on these credibility determinations. Id. at 307, 605 S.E.2d at 277.

conclusion that wife established husband's donative intent concerning the inherited properties by clear and convincing evidence. Therefore, we hold that the circuit court did not err in classifying the properties husband inherited from his mother as marital property, and we affirm the circuit court's decision regarding the classification of these properties, 9420 Epson Downs Drive, 6425 Millhiser Avenue, 4808 Leonard Parkway, and the nine lots in Middlesex County.

While husband argues in a separate assignment of error that at least a portion of the parties' river house should have been classified as separate property, this argument fails in light of our holding concerning the circuit court's classification of the inherited properties. Husband argues that the parties' river house, 480 Rockingham Road, was acquired at least partially with proceeds resulting from the sale of another river house he inherited from his mother that was his separate property.[9] As we have concluded that the circuit court correctly classified the property husband inherited from his mother as marital property, husband's argument concerning the parties' river house fails because no separate funds were used to acquire the property. As the inherited river house was marital property, the funds acquired from the sale of that house were also marital. Accordingly, we affirm the circuit court's classification of the parties' river house located at 480 Rockingham Road.

---

[9] Code § 20-107.3(A)(3)(d) provides that:

> When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is *retraceable by a preponderance of the evidence* and was not a gift, such contributed property shall retain its original classification."

(Emphasis added). The circuit court also held in this case that husband failed to adequately trace his allegedly separate funds used to acquire the parties' river house from the marital funds used to purchase the property. An analysis of whether husband adequately traced his separate funds is unnecessary given our decision affirming the circuit court's decisions concerning husband's donative intent and the classification of the inherited property.

- 13 -

Wife contends that the circuit court abused its discretion by only awarding her twenty-five percent of the value of the parties' commercial rental properties. Wife argues that she should have been awarded a greater percentage of the value of these properties based on the evidence of this case. Given the deferential standard of review on appeal, we find no abuse of discretion by the circuit court.

"In determining the equitable distribution of marital property, '[t]he function of the [circuit court] is to arrive at a fair and equitable monetary award based on the equities and the rights and interests of each party in the marital property.'" Fadness v. Fadness, 52 Va. App. 833, 841, 667 S.E.2d 857, 861 (2008) (quoting Mitchell v. Mitchell, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987)). "In reviewing an equitable distribution award on appeal, 'we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances presented in each case.'" Ranney v. Ranney, 45 Va. App. 17, 38, 608 S.E.2d 485, 495 (2005) (quoting Artis v. Artis, 4 Va. App. 132, 137, 354 S.E.2d 812, 815 (1987)). "'A decision regarding equitable distribution[ ]will not be reversed unless it is plainly wrong or without evidence to support it.'" Gilman v. Gilman, 32 Va. App. 104, 115, 526 S.E.2d 763, 768 (2000) (quoting Rahbaran v. Rahbaran, 26 Va. App. 195, 205, 494 S.E.2d 135, 139 (1997)).

Courts are required to consider each factor listed in Code § 20-107.3(E) when making equitable distribution decisions. Code § 20-107.3(E) states:

---

[10] As previously noted, wife also argues that the circuit court abused its discretion by failing to expressly consider each factor listed in Code § 20-107.3(E) in reaching its equitable distribution decision. Specifically, wife contends that the circuit court failed to consider the factors listed in Code § 20-107.3(E)(8), (9), and (10). While wife failed to object on these specific grounds before the circuit court, she objected to the circuit court's decision to award her twenty-five percent of the value of the parties' rental properties. Accordingly, we address this argument here without addressing wife's specific argument concerning the circuit court's failure to adequately consider each factor listed in Code § 20-107.3(E).

The amount of any division or transfer of jointly owned marital property, and the amount of any monetary award, the apportionment of marital debts, and the method of payment shall be determined by the court after consideration of the following factors:

1. The contributions, monetary and nonmonetary, of each party to the well-being of the family;

2. The contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties;

3. The duration of the marriage;

4. The ages and physical and mental condition of the parties;

5. The circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce under the provisions of subdivisions (1), (3) or (6) of § 20-91 or § 20-95;

6. How and when specific items of such marital property were acquired;

7. The debts and liabilities of each spouse, the basis for such debts and liabilities, and the property which may serve as security for such debts and liabilities;

8. The liquid or nonliquid character of all marital property;

9. The tax consequences to each party;

10. The use or expenditure of marital property by either of the parties for a nonmarital separate purpose or the dissipation of such funds, when such was done in anticipation of divorce or separation or after the last separation of the parties; and

11. Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

"A trial court, when considering these factors, is not required to quantify the weight given to each, nor is it required to weigh each factor equally, though its considerations must be supported by evidence." Marion v. Marion, 11 Va. App. 659, 664, 401 S.E.2d 432, 436 (1991); see also

- 15 -

<u>Fadness</u>, 52 Va. App. at 841, 667 S.E.2d at 861 ("'The requirement that the trial court consider all of the statutory factors necessarily implies substantive consideration of the evidence presented . . . [but] does not mean that the trial court is required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" (quoting <u>Woolley v. Woolley</u>, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986))).

In the present case, the circuit court stated that it considered all of the factors listed in Code § 20-107.3(E) in reaching its decision regarding the equitable distribution of the parties' marital assets, and it provided detailed analysis concerning the factors that it determined were the "most pertinent" to this case. The circuit court attributed significant weight to its findings based on the first two factors of Code § 20-107.3(E), which focus on the monetary and nonmonetary contributions of each party to the well-being of the family and the acquisition, care, and maintenance of the parties' marital property. <u>See</u> Code § 20-107.3(E)(1) and (2). The circuit court also emphasized factor six, which concerns how and when the parties' marital property was acquired. <u>See</u> Code § 20-107.3(E)(6).

The circuit court found that "the monetary contributions to the marriage were almost exclusively husband's" and that wife did not play "any significant role in the acquisition and management of the parties' estate." The circuit court also found that husband performed most of the repairs and maintenance required by the parties' homes and their vehicles. In contrast, the circuit court concluded that wife "spent a good portion of her time spending money, pursuing leisure activities, and seeking to obtain a higher social status." The circuit court also concluded that husband provided significant monetary and nonmonetary support for wife's daughter and other members of her family.

The circuit court determined that the parties' commercial rental properties "were largely established via the acquisition of property husband had before the time of marriage, by gifts

- 16 -

received from his relatives during the course of the marriage, and by husband's management of the properties during the course of the marriage." Additionally, the circuit court found that it was "likely in wife's best interest if husband continue[d] to manage these parcels for income-producing purposes." Based on these circumstances, the circuit court concluded that a disproportionate award was appropriate. The circuit court awarded all of the commercial rental properties to husband and awarded twenty-five percent of the net value of those properties to wife.

As wife acknowledged in her brief to this Court, Code § 20-107.3 does not contain a presumption favoring an equal division of marital property. See Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 830-31 (1986). Contrary to wife's arguments, the evidence in the present case supported the circuit court's equitable distribution decision. The circuit court considered the factors listed in Code § 20-107.3(E) and determined that a disproportionate award concerning the parties' commercial rental properties was appropriate. The circuit court primarily based this decision on the husband's monetary and nonmonetary contributions to the marriage, his successful management of the rental properties throughout the marriage, and the fact that some of the rental properties were acquired from husband's family. We conclude that the circuit court's equitable distribution decision was reasonable in light of these circumstances. Accordingly, we hold that the circuit court did not abuse its discretion and affirm its equitable distribution decision.

C. SPOUSAL SUPPORT

Both parties challenge the circuit court's decision regarding spousal support. Husband and wife each contend that the circuit court erred by finding that husband's income was $40,000 per month, and by awarding wife spousal support in the amount of $10,000 per month based on this erroneous calculation. Husband argues that the parties' 2010 and 2011 tax returns

established that he earned approximately $20,000 per month. Wife, however, argues that husband earned at least $80,000 per month. Although the financial evidence presented in this case is somewhat confusing and convoluted, it supports the circuit court's calculation of husband's monthly income. Therefore, the circuit court did not err by awarding wife spousal support based on this calculation.

"In reviewing a spousal support award, we are mindful that the trial court has broad discretion in awarding and fixing the amount of spousal support. Accordingly, our review is limited to determining whether the trial court clearly abused its discretion." West v. West, 53 Va. App. 125, 130-31, 669 S.E.2d 390, 393 (2008) (quoting Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005)); see also Papuchis, 2 Va. App. at 133, 341 S.E.2d at 831 ("[I]n fixing spousal support a trial court has broad discretion which should not be interfered with by an appellate court unless it is clear that some injustice has been done[.]").

While husband concedes that an award of spousal support is appropriate under the circumstances of this case, he argues that his 2010 and 2011 tax returns established that his income was approximately $20,000 per month.[11] Husband notes that wife signed both tax returns and that she failed to question their accuracy when the accountants that prepared them testified before the circuit court.

Wife claimed that husband earned much more than $20,000 per month, and argued that the income reported on his tax returns failed to properly account for rents he received from the parties' rental properties. She presented bank statements showing various credits that she claimed were rents received by husband. These statements also showed that husband routinely paid for personal expenses with income from his corporate accounts. Based on the deposits and

---

[11] Husband's monthly income, determined by averaging the amounts of annual income reported in the 2010 and 2011 tax returns ($218,166 and $248,863, respectively), is actually $19,459.54.

- 18 -

withdrawals from husband's bank accounts, wife claimed that husband earned more than $80,000 per month.

The circuit court concluded that husband paid for personal expenses out of business accounts and that he underestimated and failed to account for rents he received from the parties' rental properties. The circuit court also noted that husband offered little documentation establishing the amounts of the monthly payments he made on the mortgages and equity lines of credit on the parties' rental properties and their other marital properties. Based on these considerations, the circuit court determined that husband earned $40,000 per month, and stated that this was a "fairly conservative" calculation.

Contrary to the arguments of both parties, the record supports the circuit court's calculation of husband's income. The circuit court clearly determined that husband earned more than $20,000 per month, and the evidence presented in this case supports that conclusion. While the bank statements that wife introduced into evidence did not establish the exact amount of husband's monthly income, they demonstrated that husband withdrew around $40,000 per month from corporate bank accounts between March 2012 and April 2013. As wife demonstrated in her written closing argument filed with the circuit court, husband spent and withdrew an average of $44,807.17 per month from corporate accounts between March 16, 2012 and October 1, 2012.[12] He used these funds to pay personal expenses or he deposited them into his personal accounts. Similarly, husband spent and withdrew an average of $44,652 per month from corporate accounts for the same purposes from October 2012 through April 2013.[13] The circuit court could reasonably infer from this evidence that husband earned approximately $40,000 per month.

_____

[12] This calculation did not include a $900,000 withdrawal in October 2012 or payments made during this period on the parties' home equity line of credit.

[13] Again, this calculation did not include the $900,000 withdrawal in October 2012.

- 19 -

In light of the financial evidence presented in this case, we hold that the circuit court did not abuse its discretion when it calculated husband's income and awarded wife spousal support in consideration of that amount. Accordingly, we affirm the circuit court's spousal support decision.[14]

### III. CONCLUSION

In conclusion, we find no abuse of discretion by the circuit court. The evidence of this case supported the circuit court's classification of the property husband inherited from his mother. In light of the circuit court's credibility determinations and wife's testimony, the circuit court reasonably concluded that wife established husband's donative intent concerning these properties by clear and convincing evidence. The circuit court's distribution of the parties' marital rental properties was reasonable considering husband's contributions to the marriage, his management of the properties, and the fact that the properties were acquired from his family. Additionally, the evidence presented in this case supported the circuit court's determination concerning husband's income. For these reasons, we affirm the circuit court's decision.

<u>Affirmed.</u>

---

[14] On appeal, both parties only challenge the circuit court's determination of husband's income and its award of spousal support based on that determination. Neither party argues that the circuit court misapplied Code § 20-107.1 or otherwise abused its discretion concerning its spousal support determination. Therefore, we limit our consideration to the circuit court's determination of husband's income. As we have concluded that the evidence of this case supported that determination, we affirm the circuit court's spousal support award.